The STATE of Ohio, Appellee,

v.

EARLE, Appellant.

[Cite as *State v. Earle* (1997), 120 Ohio App.3d 457.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–051.

Decided May 23, 1997.

458

■■■■■■■■■■

*Charles E. Coulson*, Lake County Prosecuting Attorney, *Ariana E. Tarighati* and *Taylir K. Linden*, Assistant Prosecuting Attorneys, for appellee.

*Richard P. Morrison*, for appellant.

---

CHRISTLEY, Presiding Judge.

This is an appeal resulting from the denial of a motion to suppress wherein it was argued that there was a lack of reasonable suspicion to justify an investigative stop. The testimony at the suppression hearing set forth that, after a briefing preceding his 11:00 p.m. to 7:00 a.m. shift on June 30, 1996, Officer Eric Miller of the Painesville Police Department went on patrol.

At approximately 12:30 a.m., Officer Miller noticed a vehicle matching the description and license plate number of the vehicle involved in an earlier attempted drug sale as reported by the Lake County Narcotics Agency ("LCNA") at the briefing. That report was to the effect that there had been an attempted sale of crack cocaine in the Sanford Street area of Painesville involving a 1984, four-door blue Pontiac 6000 with Ohio License Plate Number SCA 073.

Shortly thereafter, Miller spotted the vehicle and followed it to three different convenience stores, within close proximity to each other, in a high crime area. The vehicle stopped at each store, with Tanya Earle, appellant, actually entering the first two stores, but apparently purchasing nothing. At the third store, Officer Miller watched as a male and a female walked up to the Pontiac, which had the driver's side window down. The male spoke to appellant for three or four minutes, but appellant never exited the vehicle. The Pontiac then left the parking lot. These stops took place within a thirteen-minute span of time.

Officer Miller advised the other officers on duty of the activities he had observed. He indicated that he was going to make a traffic stop based upon possible drug activity. He followed the Pontiac until backup officers arrived.

Officer Miller stopped and confronted appellant. Following routine questioning, appellant agreed to a search of the Pontiac and then exited the vehicle. Officer Miller was then advised by dispatch that appellant was driving under suspension and had no operator's license. Appellant was placed under arrest for driving under suspension.

Other officers arrived and an inventory search of the vehicle took place that revealed a Tic-Tac container, under the front passenger seat, containing white rocks that looked like crack cocaine. Some of the rocks were later tested by the Lake County Regional Forensic Laboratory and identified as crack cocaine.

The officers also found a pager attached to the driver's side visor, a cellular phone, and appellant's purse. The purse contained a receipt for the pager, approximately $270 in cash, a list of debtors, "E–Z Wider" rolling papers, a cigarette lighter, and a straight razor that was later tested and determined to have trace amounts of cocaine on it. These items were secured by the police officers.

Appellant initially denied that the purse belonged to her even though it contained all of her personal effects and identification. However, she took the purse with her to jail and claimed it as her property.

Officer John Levicki testified that he noticed that appellant's pager rang a number of times and he wrote down the telephone numbers from where the calls originated. This was done in an attempt to see whether the numbers matched known drug users or dealers. Officer Levicki noted that the pager rang between twenty-five and thirty times in the short time it took him to tag the evidence and complete the required paperwork.

Officer Levicki noted that one number, in particular, had paged appellant four or five times, so he called the number to try to set up a drug deal. He arranged to meet the male caller, but the caller never showed up. Officer Levicki called the man back to see why he did not show up, and the caller indicated that there were too many police officers in the area.

On October 19, 1995, appellant was indicted by the Lake County Grand Jury on one count of drug abuse, which the indictment indicated was a third degree felony, in violation of R.C. 2925.03. The indictment further indicated that appellant did knowingly possess 6.11 grams of crack cocaine, an amount greater than the bulk amount but less than three times the bulk amount. She was also indicted on one count of possession of criminal tools, in violation of R.C. 2923.24.

On December 13, 1995, appellant filed a motion to suppress. A suppression hearing was conducted on January 4, 1996, and on January 11, 1996, the trial court denied appellant's motion. A jury trial commenced on January 16, 1996. Just prior to trial, the state orally moved to amend the indictment on count one from "6.11 grams" to "forty rocks," and the title of the charge, from "drug abuse" to "trafficking in drugs." The trial court granted the motion, finding that the amendment did not change the substance or nature of the offense because the Revised Code section remained the same.

Appellant was found guilty on both counts on January 17, 1996. On January 31, 1996, appellant filed a motion to set aside the verdict and a motion for a new trial. The trial court denied these motions on March 4, 1996. On March 18, 1996, appellant was sentenced to serve an indefinite term of incarceration of one and one-half years on count one with a $3,000 fine and a two–year driver's license

suspension, and one and one-half years on count two, to be served concurrent to the sentence on count one. Execution on the fine was suspended.

On April 2, 1996, appellant timely filed a notice of appeal with the following assignments of error:

"1. The trial court committed reversible error when it failed to grant the defendant's motion to suppress.

"2. The trial court erred when, over objection of defendant, the court allowed an amendment of the indictment which changed the identity and classification of the crime charged.

"3. The trial court erred in permitting the state to use a peremptory challenge in a racially discriminatory fashion thereby denying appellant equal protection under the law as guaranteed by the United States and the Ohio Constitutions.

"4. The trial court erred to the prejudice of the defendant when it allowed the jury to consider certain hearsay testimony as substantive proof of defendant's guilt.

"5. The trial court erred to the prejudice of the defendant when the trial judge did not consider defendant's motion for public payment of transcript of the suppression hearing until the morning of trial.

"6. The trial court erred to the prejudice of the defendant by admitting into evidence State's Exhibits 1–9.

"7. The jury verdict is against the manifest weight of the evidence and sufficiency of the evidence and should be reversed because it violates the fourteenth amendment of the United States Constitution Due Process Clause."

In the first assignment of error, appellant contends that the trial court erred when it denied her motion to suppress. Specifically, appellant asserts that the information received by the police officers from the LCNA, standing alone, lacked sufficient indicia of reliability and that the officers failed to corroborate the information. Appellant further alleges that Officer Miller stopped her despite not seeing her do anything illegal that would warrant a stop.

It is well established that the investigative stop exception to the Fourth Amendment to the United States Constitution warrant requirement allows a police officer to stop a motorist when he has a reasonable suspicion that criminal behavior has occurred, based upon specific and articulable facts. *State v. Bailey* (Dec. 29, 1995), Ashtabula App. No. 95–A–0023, unreported, at 4–5, 1995 WL 815477, citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Accordingly, "an officer's reasonable belief that a person is acting in violation of the law is sufficient to justify an investigatory stop." *State v. VanScoder* (1994),

92 Ohio App.3d 853, 855, 637 N.E.2d 374, 375. Investigatory stops must be examined by reviewing the totality of the circumstances surrounding the stop. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273, certiorari denied (1990), 501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002; *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490–491, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252.

The United States Supreme Court has stated that reasonable suspicion and articulable grounds deal with probabilities rather than hard certainties. *United States v. Cortez* (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629. The *Cortez* court stated:

"The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *Id.* at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629.

■ In *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, the Supreme Court of Ohio considered certain factors in determining the reasonableness of an investigative stop based on the totality of the circumstances. Those factors include (1) the area of the investigation's reputation for being a high crime area, (2) the time of day, and (3) suspicious behavior. *Id.* at 295, 18 O.O.3d at 474–475, 414 N.E.2d at 1047; see, also, *Bobo*, at 178–179, 524 N.E.2d at 490–492.

■ In reviewing the trial court's decision regarding a motion to suppress, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144. However, an appellate court must make a "fresh determination whether those facts satisfy the minimal constitutional requirements that there be a reasonable suspicion of criminal activity without deference to the trial court's decision." *State v. Yemma* (Aug. 9, 1996), Portage App. No 95–P–0156, unreported, at 8, 1996 WL 495076, citing *Williams*, at 41, 619 N.E.2d at 1143–1144; see, also, *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1173–1174; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908–909; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 726–727. Accordingly, in reviewing the trial court's decision in this matter, we must independently assess all of the circumstances surrounding the stop of appellant, especially because it is undisputed that appellant had committed no traffic violations.

■ The trial court held that Officer Miller was justified in stopping appellant based upon the foregoing circumstances. We agree. The totality of the circumstances included the following: (1) the person made three stops at convenience stores without apparently making any purchases; (2) the hour was late; (3) the area was known for drug transactions; (4) at the last of the three stops, the person parked in the far corner of the parking lot away from the entrance of the store for no apparent reason and was approached by two people who conducted a conversation; and (5) a police report identified that particular vehicle as being involved in an earlier attempted drug deal. We acknowledge that, individually, none of the observed activity could be classified as illegal activity. However, appellant's actions, when coupled with the earlier briefing about the car, set out a continuing course of conduct that constituted suspicious behavior, especially at that late hour and in a neighborhood troubled by high drug trafficking. While the combination of such activity would not rise to the level of probable cause justifying an arrest, it was sufficiently suspicious to reasonably justify further inquiry.

The first assignment is found to be without merit.

In the second assignment of error, appellant submits that the trial court erred when it allowed an amendment of the indictment that changed the identity and classification of the crime charged.

A review of the original indictment reveals that under count one, appellant was indicted as follows:

"On or about the 1st day of July, 1995, at the City of Painesville, Lake County, Ohio, one TANYA M. EARLE did, knowingly, posses Crack Cocaine, a compound mixture, preparation, or substance included in Schedule II, in an amount equal to or exceeding the bulk amount, but in an amount less than three (3) times that amount, to-wit: 6.11 grams.

"This act, to-wit: Drug abuse, constitutes a Felony of the Third degree, contrary to and in violation of the Ohio Revised Code, Title 29, Section 2925.03; and against the peace and dignity of the State of Ohio. Upon conviction of this offence, the Court shall impose a sentence of eighteen (18) months, and a mandatory fine of $3,000."

Subsequently, appellant filed a request for a bill of particulars. The state responded on December 11, 1995 by specifically stating that appellant violated R.C. 2925.03, and that the amount of crack cocaine was equal to or exceeded the bulk amount, but in an amount less than three times the bulk amount.

On the morning of the trial, January 16, 1996, the trial court allowed the state to orally amend the indictment in two ways. First, the amount of crack cocaine that appellant was charged with possessing was changed from "6.11 grams" to

"forty rocks." Second, the name of the offense was changed from "Drug Abuse" to "Trafficking in Drugs." None of the other language had to be changed, since forty rocks of crack cocaine does exceed the bulk amount but is less than three times the bulk amount, and, the crime of trafficking in drugs is, in fact, a violation of R.C. 2925.03. The crime that appeared on the original indictment, drug abuse, is covered instead by R.C. 2925.11. Hence, the original indictment contained an obvious error which was corrected by the state's amendment.

Crim.R. 7(D) provides:

"The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

Appellant contends that the amendment to the indictment changed the name and/or identity of the crime charged and, therefore, was improper pursuant to Crim.R. 7(D).

Appellant further claims that by changing the name or identity of the crime from drug abuse to trafficking in drugs, the level of the crime was changed from a fourth degree felony to a third degree felony. We disagree.

▮ This court recently held that an indictment may be amended to correct a clerical error so long as it does not change the identity of the offense. *State v. Pocius* (Dec. 13, 1996), Lake App. No. 95–L–179, unreported, at 10, 1996 WL 761213. In the present case, it is clear that the state was merely correcting a clerical error because the original indictment contained an internal inconsistency. To be effective, an indictment must contain language sufficient to give the accused notice of the charges against him. *State v. Luna* (1994), 96 Ohio App.3d 207, 210, 644 N.E.2d 1056, 1057–1058.

The original indictment contained the proper language as to the possible penalty and the amount of drugs in relationship to the bulk amount. It also included the proper Revised Code section. Thus, appellant was not prejudiced in preparing her defense, as she was given adequate notice of what the state intended to prove at trial. Accordingly, the trial court acted appropriately in permitting the state to amend the indictment to correct two clerical errors.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant, who is white, asserts that the trial court erred in permitting the state to use a peremptory challenge in a racially discriminatory manner. Specifically, appellant maintains that the exclusion of Donald Rice, an African–American male, from the venire was improper. Appel-

lant argues that the reason used to justify the exclusion of Rice was equally applicable to a number of white jurors who were not removed from the panel.

In *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held that the jury selection process is subject to the commands of the Equal Protection Clause and that a prosecutor is entitled to exercise peremptory challenges " 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried" and as long as the challenge is not based solely on account of a potential juror's race. *Id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82–83, quoting *United States v. Robinson* (D.Conn.1976), 421 F.Supp. 467, 473.

The *Batson* court held that in order to establish a prima facie case of purposeful discrimination, the defendant must first show that he is a member of a cognizable racial group (this requirement was eliminated in *Powers v. Ohio* [1991], 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411, wherein the court held that a defendant may object to race-based exclusions of jurors regardless of whether the jurors are the same race as the defendant, *id.* at 402, 111 S.Ct. at 1365, 113 L.Ed.2d at 419); that the prosecutor has exercised one or more peremptory challenges based upon race; and that the facts and any other relevant circumstances raise an inference that the prosecutor used that tactic to exclude the veniremen from the jury on account of their race. *Id.* at 96, 106 S.Ct. at 1722–1723, 90 L.Ed.2d at 87–88.

Once the defendant has established a prima facie case of discrimination, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 103. Then the trial court must determination whether the defendant has carried his burden of establishing purposeful discrimination.

In the instant action, the state exercised its peremptory challenge on Donald Rice. While appellant's counsel objected to the state's action, he offered no specific reason for the objection. Nonetheless, the state proceeded to articulate a race-neutral explanation for striking Rice, and the trial court allowed the peremptory challenge to stand. It is clear from a review of the transcript that defense counsel failed to establish a prima facie case of discrimination. Even if a prima facie case had been made, the prosecution pointed out that the same policeman involved in the prosecution of Rice's brother was a primary witness in the instant case. That was not true of any of the white jurors who had relatives who had been convicted of crimes. Hence, either with or without a prima facie case, the trial court properly allowed the peremptory challenge to stand.

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant argues that the trial court erred when it allowed the jury to consider certain hearsay testimony as substantive proof of her guilt.

A review of the transcript reveals that Officer Levicki testified that, while he was tagging evidence following appellant's arrest, he noticed that one telephone number in particular repeatedly called appellant's pager. He called that number and tried to set up a drug transaction with the person who had been paging appellant. Officer Levicki was permitted to testify to his half of the conversation.

Appellant contends that this testimony was inadmissible, as the state was using the "backdoor" to enter hearsay testimony into evidence. Appellant maintains that this evidence was not admissible pursuant to Evid.R. 901(B)(6).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801. Although hearsay is generally not admissible, there are numerous exceptions to the rule. See Evid.R. 803 and 804. Evid.R. 901, upon which appellant relies, provides, in pertinent part:

"(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

" * * *

"(6) *Telephone Conversations*. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called * * *."

■ The trial court has broad discretion in the admission and the exclusion of evidence and, absent a clear abuse of discretion and material prejudice to the defendant, an appellate court should be slow to interfere. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 109, 543 N.E.2d 1233, 1238.

■ We disagree with appellant's characterization of the conversation. Officer Levicki was, in fact, limited to the statement that he called that number, that he told the caller he could get him a "forty," and, as a result, was to meet with the caller, but was stood up. There was no improper hearsay recitation, and, thus, we find no error.

Appellant's fourth assignment of error is without merit.

In the fifth assignment of error, appellant asserts that the trial court erred when it did not consider her motion for public payment of the transcript of the suppression hearing until the morning of the trial. Appellant contends that she was denied a fair trial because her counsel did not have the opportunity to question police officers regarding any inconsistent statements they may have made. Further, appellant submits that no available alternative existed to fulfill the same function.

The suppression hearing was conducted on January 4, 1996. On January 11, 1996, the trial court overruled appellant's motion to suppress. Appellant filed her motion for public payment of the transcript on January 11, 1996. On the morning of the trial, January 16, 1996, the trial court stated that it would have granted appellant's motion but for the fact that the issue had become moot, since trial was commencing at that time.

Crim.R. 12(C) provides:

"All pretrial motions except as provided in Rule 7(E) and Rule 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions."

Based upon Crim.R. 12(C), appellant's motion was untimely filed as it was filed less than seven days before trial.

Appellant relies on *State v. Arrington* (1975), 42 Ohio St.2d 114, 71 O.O.2d 81, 326 N.E.2d 667, to support her claim. *Arrington* is distinguishable. In *Arrington*, the defendant's trial occurred prior to the implementation of the new rules that included the time limitation set forth for motions in Crim.R. 12(C). Hence, the defense counsel in *Arrington* did not have any particular deadline to file his motion for the transcript. In the case *sub judice*, Crim.R. 12(C) was in full force and effect. Further, appellant never requested a continuance as did the defendant in *Arrington*.

Based upon the foregoing analysis, *Arrington* is distinguishable from the present case. Even with perfect hindsight, appellant is unable to show that she was prejudiced by the unavailability of the transcript as evidenced by her failure to allege in any post-conviction proceeding that any inconsistencies in testimony existed.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant contends that the trial court erred by admitting certain exhibits into evidence. Specifically, appellant claims that state's Exhibit Nos. 1 through 9 were inadmissible for various reasons.

As previously stated in this opinion, the admission or exclusion of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Finnerty, supra.*

In *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 171, the Supreme Court of Ohio held:

"The term 'abuse of discretion' '* * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149."

Regarding State's Exhibit No. 1, a Tic–Tac container wherein forty rocks of crack cocaine were found, appellant asserts that a chain of custody was not established, and that only seven of the forty rocks in question were actually tested by the Lake County Regional Forensic Laboratory. Thus, appellant argues that the remaining thirty-three rocks may have been "counterfeit."

In *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105, the court stated:

"Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute. The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur; breaks in the chain of custody go to the weight, not the admissibility, of the evidence." *Id.* at paragraph three of the syllabus.

In the present case, a review of the transcript reveals that the state presented sufficient testimony to establish a proper chain of custody. Officer Miller testified that after he recovered the evidence from the vehicle, he bagged, sealed, and logged in each separate piece of evidence, including the Tic–Tac container. The evidence was then sent to the crime lab. Officer Miller testified at trial that there was no evidence that any tampering had occurred. Officer Levicki also testified to the procedure that was followed with the evidence and stated that there was no visible evidence of tampering.

The state also offered the testimony of John Kucmanic, a chemist/toxicologist employed by the Lake County Crime Lab. He explained the procedure he followed with each piece of evidence received in this case. He broke the seals to test the evidence and then resealed the envelopes with his initials on the seal when he was finished with his tests. Like the police officers, Kucmanic also testified that no tampering had occurred with the evidence. Thus, the state established sufficient evidence of a chain of custody with respect to the Tic–Tac container.

Next, appellant argues that the state failed to test all forty rocks of the crack cocaine to determine their authenticity. The random sampling method of testing, however, has been upheld on numerous occasions. *State v. Mattox* (1983), 13 Ohio App.3d 52, 53, 13 OBR 55, 56–57, 468 N.E.2d 353, 355–356; *In re Lemons* (1991), 77 Ohio App.3d 691, 696, 603 N.E.2d 315, 318–319. Accordingly, the random testing performed in this case was sufficient to allow the trier of fact to conclude that all forty rocks contained cocaine.

Appellant also claims that the following exhibits, all found in the vehicle that she was driving, were not relevant and, therefore, not admissible pursuant to Evid.R. 402: State's Exhibit No. 2, a razor blade with trace amounts of cocaine on it; State's Exhibit No. 3, $207.79 cash; State's Exhibit No. 4, notebook paper containing names and amounts supposedly owed by those people; State's Exhibit No. 5, a receipt for the pager; State's Exhibit No. 6, rolling papers; State's Exhibit No. 7, cigarette lighter; State's Exhibit No. 8, cellular phone; and State's Exhibit No. 9, pager.

Clearly, all of these exhibits were relevant to establish that appellant was trafficking in drugs as charged in count one of the indictment as all of the items in question are common in the world of drug sales. Thus, they were not precluded by Evid.R. 402. Pursuant to Evid.R. 403(A), however, even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Appellant has failed to articulate any argument as to how she was unfairly prejudiced by the admission of this relevant evidence, and this court will not speculate as to appellant's argument.

Based upon the foregoing analysis, State's Exhibit Nos. 1 through 9 were properly admitted by the trial court.

Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant asserts that her conviction was against the manifest weight of the evidence and the sufficiency of the evidence.

In *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93–L–082, unreported, 1994 WL 738452, this court distinguished between "sufficiency of the evidence" challenges and "manifest weight" challenges. We stated:

" 'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

" ' " * * * [T]he test [for sufficiency of the evidence] is whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the

elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. Jackson v. Virginia* (1979), 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574]; *United States v. Lincoln* (C.A.8, 1980), 630 F.2d 1313, 1316; *Dorman v. State* (Alaska 1981), 622 P.2d 448, 453; *Ridley v. State* (1976), 236 Ga. 147, 149, 223 S.E.2d 131, 132; *State v. Sorgee* (1978), 54 Ohio St.2d 463 [8 O.O.3d 452, 377 N.E.2d 782]; *State v. Robinson* (1955), 162 Ohio St. 486 [55 O.O. 388, 124 N.E.2d 148]." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.' (Emphasis added.) *State v. Davis* (1988), 49 Ohio App.3d 109, 113 [550 N.E.2d 966, 966–967].

"In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' *Jackson* at 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574]; *State v. Davis* (1988), 38 Ohio St.3d 361, 365 [528 N.E.2d 925, 930], '[a] reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' *State v. Eley* (1978), 56 Ohio St.2d 169 [10 O.O.3d 340, 383 N.E.2d 132], syllabus.

"On the other hand, 'manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

" ' In determining whether the verdict was against the manifest weight of the evidence, " * * * [t]he court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.* * * " ' (Citations omitted.) (Emphasis added.) *Davis*, 49 Ohio App.3d at 113 [550 N.E.2d at 969–970]." *Id.* at 10–11.

It is well established in Ohio that the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *State v. Loza* (1994), 71 Ohio St.3d 61, 69, 641 N.E.2d 1082, 1096.

In the present case, appellant claims that the state failed to prove that she "knowingly" possessed cocaine because other people had access to the vehicle she was driving. Additionally, she argues that there was no testimony that she intended to use the pager for criminal purposes. She asserts that she had the pager strictly for emergency situations.

■ A review of the transcript, however, reveals that the evidence presented, including all reasonable inferences, does not support appellant's claim that the jury clearly lost its way. It was reasonable for the jury to find appellant guilty of both charges. There was evidence that the 1984 blue Pontiac 6000 appellant was driving had earlier been involved in a drug transaction. Moreover, Officer Miller testified that within a thirteen-minute span of time, he followed appellant to three different convenience stores in a high crime area late at night. Appellant appeared to make no purchases but, instead, conducted brief conversations with people at each location. The combination of those facts justifiably raised the suspicion of Officer Miller.

After being stopped, appellant consented to a search of her vehicle. The search produced all of the evidence presented at trial, including the cocaine itself. There was an abundance of circumstantial evidence to support the conclusion that the cocaine belonged to appellant. In appellant's purse, officers found a pager, a razor blade with crack cocaine residue, a ledger, and approximately $270 in cash. Based upon this evidence, the earlier report of the blue Pontiac being involved in a drug transaction, and Officer Miller's personal observations, this court is convinced that, clearly, the jury did not lose its way. Accordingly, appellant's conviction for drug trafficking was not against the manifest weight of the evidence. Additionally, there was substantial evidence, when viewed in a light most favorable to the prosecution, to allow the jury to conclude that all elements of the offense were proven beyond a reasonable doubt.

■ Appellant's conviction on the count of possessing criminal tools, *i.e.*, the pager, was also supported by sufficient evidence and not against the manifest weight of the evidence. It was undisputed that the pager was called twenty-five to thirty times in a relatively short period of time immediately after appellant's arrest. Officer Levicki was able to set up what he intended to be a drug transaction by calling back one of the people who had attempted to reach appellant through the pager. This evidence supported the state's contention that appellant used the pager for criminal purposes rather than solely as an emergency tool. Additionally, the other evidence seized by the police supported the conclusion that appellant was using the pager to conduct drug-related business.

Based upon the foregoing analysis, the jury's verdict was supported by sufficient evidence and not against the manifest weight of the evidence.

Appellant's seventh assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER, J., concurs.

WILLIAM M. O'NEILL, J., dissents.

WILLIAM M. O'NEILL, Judge, dissenting.

I would respectfully dissent from the majority opinion for the following reasons.

By virtue of a change-of-shift advisory, the arresting officer was alerted to place defendant Tanya Earle's motor vehicle under a heightened level of scrutiny, since it was believed the *vehicle* had been involved in drug activity. Once the vehicle was located, it was in fact placed under continuous surveillance, and yet, in spite of this extraordinary level of attention, all of the activities observed were clearly legal. As the majority correctly points out, nothing that was observed by the arresting officer could be categorized as illegal activity.

In order for a police officer to conduct a warrantless search, the officer must have, at a minimum, "reasonable suspicion" that the search will produce evidence of criminal activity. Stated another way, reasonable suspicion is essentially a police officer's opinion. The courts have consistently upheld the authority of law enforcement officials to act upon such opinions, provided they are supported by articulable facts which can be reviewed by the courts. To hold otherwise would be to permit warrantless searches based upon theories, hunches, and other legally impermissible foundations.

The difficulty presented in this case is that there are no articulable facts demonstrating criminal activity to review. There is, however, the opinion of a second police officer, from the Lake County Narcotics Agency ("LCNA"), in support of the warrantless intrusion. There is no precedent to support the proposition that if one officer's opinion is insufficient to justify a search, that somehow two officers' opinions would create a different result. The opinion of a second police officer that criminal activity is suspected, is not an articulable fact, and is therefore of limited probative value in this analysis.

In evaluating the information before him, the police officer had two categories of information. In the first category, he had observed patently legal behavior which, in his opinion, indicated a pattern of criminal activity. On a constitutional basis, it is important to note that even after the "suspect" car had been located and trailed at length, the officer remained unable to identify a single act of criminal activity. Therefore, as to first-hand information, the officer could point to no articulable fact that supported his conclusion that illegal activity was taking place. It is particularly troubling that the activity observed could just as easily be classified as innocuous and innocent. The majority opinion suggests that one who goes on a search of convenience stores for a particular brand of cigarettes or

cereal, and fails to find the favorite brand at the first three stores, has somehow waived one's constitutionally guaranteed right to be free from warrantless intrusions. The police officers in this matter are to be commended for their candor when they testified that no criminal activity was observed. Such forthright testimony, however, merely serves to demonstrate the lack of articulable facts that were and are available for review.

Faced with this lack of reasonable suspicion to justify a search, the officer turned to his second category of information, which essentially was the opinion of a fellow officer that the car, not the individual, had been involved in some unidentified criminal activity earlier in the day. He had been told at the beginning of his shift that another law enforcement officer from another agency (LCNA), identity unknown to him, was of the opinion that the subject car had been associated with earlier, uncharged, criminal conduct. The officer from the other agency (LCNA) did not testify before the trial court. Whatever articulable facts supported the earlier conclusion, therefore, were never testified to and are therefore unavailable for review by either this court or the trial court. The trial court had no basis upon which to evaluate the facts underlying the opinion, since none were presented.

In a factually similar case where an officer made a stop based upon his own observation and a dispatch bulletin, the Sixth District Court of Appeals held that the stop was impermissible because the state failed to prove that any officer involved in the case had a reasonable suspicion based upon specific, articulable, and objective facts that criminal activity was underway. In *State v. Haupricht* (Aug. 3, 1990), Lucas App. No. L-89-202, unreported, at 7-8, 1990 WL 109965, the court stated:

"When an officer stops and detains an individual on the basis of a dispatch bulletin received, he may rely on that bulletin to seize the person without knowing the specific facts which gave rise to a reasonable suspicion that the person stopped is or was involved in some criminal activity. *United States v. Hensley* (1985), 469 U.S. 221, 230-232 [105 S.Ct. 675, 681-682, 83 L.Ed.2d 604, 613-614]. However, in order for the seizure of the person to be constitutional, the dispatching officer must issue the bulletin on the basis of articulable facts which gave rise to his conclusion that there was a reasonable suspicion that the individual was involved in some criminal activity. *Id.* The state has the burden of proof at trial to identify either the source of the dispatching officer's information or the acting officer's corroborating facts which gave rise to reasonable suspicion of criminal activity. * * * " (Citations omitted.)

The *Haupricht* court concluded:

"In the case before us, the dispatch officer did not testify. Therefore, it is unknown whether this officer had a sufficient basis for issuing the dispatch. The

officers who received the call did not know who called with complaints about the intoxicated person in the plaza. In addition, no specific person was ever identified as the intoxicated person. The officers at the scene did not enter the plaza to investigate the complaint further or identify the suspect. Furthermore, neither officer observed anything unusual about appellant or his driving that would suggest that he was intoxicated." *Id.* at *10.

In the case *sub judice,* based upon the foregoing analysis, it is my belief that the stop of appellant was impermissible, since Officer Miller did not have any specific and articulable facts to support a "reasonable suspicion" that criminal behavior had occurred. Accordingly, in regard to appellant's first assignment of error, I would find that the motion to suppress should have been granted.