OPINION
Appellant, Patricia A. Russell ("Patty"), appeals her conviction from the Portage County Court of Common Pleas. Her conviction stems from her involvement in the February 27, 1998 armed robbery of her former place of employment, the Papa John's Pizza shop ("Papa Johns") at the Barrington Town Center, also known as the Aurora Commons, in Aurora, Ohio.
The robbery was committed by Walter Turner ("Walt") and Christopher Michael Denvir ("Mike"), while Patty and her boyfriend Robert Hunt ("Robbie") waited in the car. Walt, Mike, and Robbie pleaded guilty to charges arising from the incident and testified against Patty at her trial. Walt pleaded guilty to armed robbery with a gun specification. Mike and Robbie pleaded guilty to armed robbery with no gun specification. The three accomplices gave similar testimony about the events of February 27, with differences regarding their own culpability.
A trial was held before a jury on July 21, 1998. Robbie testified that he and Walt had been together all day talking about ways to raise money so that Walt could set up a drug trafficking business. Walt testified that they only talked about his needing money to buy drugs and pay drug-related debts. At some point, they decided to rob a pizza delivery person. Patty met them later at Walt's house. They inquired about how much cash a pizza delivery person carried and abandoned the idea of robbing one after Patty told them.
They were later joined by Mike and decided to rob a Fuel Mart gas station where Patty knew someone who she did not like. Arriving at the Fuel Mart station, they inspected it for more than thirty minutes and decided that it was too busy to rob. They decided instead to rob Papa John's where Patty previously worked. Patty explained the layout of the store to them, specifically: there was an alarm under the cash register; there were no security cameras; and, they kept a large amount of cash in a locked desk in the back office.
Patty testified that she had been drinking "moonshine" out of a "mason jar" and taking sedatives that day. While her memory was clear on some aspects of the day, she claimed that she did not remember telling Walt about the layout of the Papa John's. She testified that she had called Papa John's to try to warn them, but was unable to successfully warn them because Walt caught her and threatened to kill her. Her testimony was that she believed they had abandoned the idea of robbery and were going fishing instead. None of the other witnesses testified that Patty had been drinking or doing drugs before the robbery or that Patty appeared to be under the influence of alcohol or drugs. They testified that they were all sober and all agreed to the robbery.
Upon arriving at Papa John's, Walt and Mike put bandanas over their faces and waited until there was only one person in the store. Walt brought a shotgun, which he claimed was unloaded, but had a shotgun shell in his pocket. Once inside the store, Walt told Gregory Reich, the manager and only person in the store, to get on the floor. Mike went back to the office, which was locked. They had Reich unlock the door and put all of the money into a bag. Walt and Mike took no money from the cash register. Gregory Reich testified that all employees knew that there was an alarm button by the cash register and that most of the money was kept in the back office.
After leaving Papa John's, Patty helped count the money, over $1,000, and put it in her bra for safekeeping. The four went to a bar in Akron, which was simply named Bar. At Bar, Walt gave Robbie money to buy drinks for the other three while he went upstairs to buy cocaine and marijuana. They stayed at Bar all night then went back to Walt's house. Walt gave Robbie and Patty money to get a hotel room for a few days.
A couple of weeks later, Patty's sister called Papa John's and told one of the employees that she knew Mike and Robbie were involved in the robbery. She later had Patty, who now was in prison for welfare fraud, tell Sergeant Ballou about her involvement in the robbery. The four were eventually arrested.
The jury deliberated for less than forty minutes before returning a guilty verdict on the counts of armed robbery with a gun specification. Patty raises the following assignment of error:
 "The conviction of appellant was against the manifest weight of the evidence and based on evidence that was insufficient as a matter of law."
 In her sole assignment of error, Patty asserts two distinct arguments that we will address separately.
Patty asserts that her conviction was based on insufficient evidence. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported. The test for sufficiency of the evidence is whether after viewing the probative evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Id.
Patty argues that she was too intoxicated to be in the culpable mental state necessary to commit armed robbery and that there was no testimony to support that she "knowingly" participated in the crime. Voluntary intoxication is not a defense to any crime, but may be used to negate specific intent if it is an element of the crime. State v. Mitts (1998), 81 Ohio St.3d 223,228, 690 N.E.2d 522. "The partial defense of diminished capacity is not recognized in Ohio * * *." State v. Wilcox (1982),70 Ohio St.2d 182, 436 N.E.2d 523, paragraph one of the syllabus. The prosecution produced three witnesses, albeit accomplices, who testified that Patty was not intoxicated and that she willingly provided details necessary for Walt and Mike to successfully commit the crime. Viewing this evidence in a light most favorable to the prosecution, there was sufficient evidence to support Patty's conviction.
Patty also asserts that her conviction was against the manifest weight of the evidence. Manifest weight challenges require a reviewing court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Earle (1997),120 Ohio App.3d 457, 472-473, 698 N.E.2d 440. It is well established in Ohio that the weight to be given evidence and the credibility of witnesses is primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Loza (1994), 71 Ohio St.3d 61, 69,641 N.E.2d 1082, 1096.
Patty argues that the testimony presented by the state was not credible because the three accomplices had all cut deals in return for giving testimony against her. She further argues that it appears the jury may have been punishing her for committing welfare fraud and leaving her children to pursue a drug habit. While accomplice testimony is not always reliable, the trial court instructed the jury about the weight to give to such testimony before each witness took the stand. All three accomplices generally told the same story, all implicating Patty. The details of the robbery, as given by Christopher Reich, show that it was committed by someone who had knowledge of the layout of the store and its procedures for dealing with cash. Christopher Reich's testimony supports the fact that Patty, as a former employee, told Walt and Mike the information they needed.
Furthermore, Patty testified that she remembers: Robbie and Walt discussing a robbery; calling Papa John's in an unsucessful attempt to warn the employees of the impending robbery; buying brown gloves; a conversation about fishing; stopping at the Fuel Mart to possibly rob it; telling the other accomplices that she knew a Fuel Mart employee; that Robbie and Mike had a gun and bandanas; driving towards Papa John's; grabbing the gun and throwing it in the back of the car after the robbery; and, going to Bar and drinking after the robbery. However, she claimed not to remember telling them about Papa John's layout or participating in the robbery. Substantial evidence supports the verdict. Appellant's assignment of error has no merit.
 _____________________ JUDGE ROBERT A. NADER
FORD, P.J., and O'NEILL, J., concur.