This timely appeal comes for consideration upon the record in the trial court, and the appellant's brief and oral argument to this court. Defendant-appellant Marshall Winn (hereinafter "Winn") appeals the decision of the Youngstown Municipal Court denying his motion to suppress the results of a urinalysis in a Driving Under the Influence case (hereinafter "DUI"). The issues before us are whether the arresting officer had probable cause to arrest Winn, and whether the state failed to link the urine sample to Winn because of an alleged discrepancy in the chain of custody of the evidence. For the following reasons, the decision of the trial court is affirmed.
On May 5, 2000, Winn was involved in a two-car collision with a vehicle driven by Charles Franklin (hereinafter "Franklin") on Interstate 680 in Youngstown. Winn was ticketed for failure to maintain reasonable control, and was then arrested for driving under the influence of alcohol pursuant to R.C. 4511.19(A). Winn filed a motion to suppress, alleging in pertinent part a lack of probable cause to arrest and a general lack of compliance with testing methods for the urinalysis. The motion was heard on July 12, 2000.
The state's first witness, Tracy Rutledge (hereinafter "Rutledge") testified he was driving behind Franklin's vehicle when Winn swerved into their lane from the left. Rutledge stated Winn nearly hit Rutledge's car, and then hit the rear left side of Franklin's car with the front right side of his truck. Rutledge testified that after pulling over, Winn exited his vehicle and was staggering, red in the face, and spoke with slowed speech. Franklin testified Winn was slurring his speech and staggering.
The first Youngstown police officer on the scene was Aaron Coleman, who testified to the following with regard to Winn's condition: 1) an odor of alcohol every time Winn opened his mouth; 2) slurred speech which was hard to comprehend; 3) Winn had difficulty articulating responses to questions; 4) bloodshot and glassy eyes; 5) his gait was so staggering and unsteady that Coleman had to assist Winn with walking, and; 6) Winn claimed to have consumed just one beer prior to driving. In Officer Coleman's opinion, Winn's condition made it impossible to perform field sobriety tests. Thus, he was arrested for driving under the influence of alcohol.
At the end of the hearing, the court overruled the suppression motion, ruling from the bench that the above described information which was known to Officer Coleman at the time, was sufficient information of intoxication to establish probable cause. Thereafter, on September 22, 2000, Winn pled no contest to violating R.C. 4511.19(A)(4) and the state dismissed the remaining charges. After finding Winn guilty, the court sentenced him to one hundred eighty days in jail, with one hundred seventy seven days suspended and the three days in an alcohol program; suspended his license for six months; fined him $250; and placed him on probation for one year. We affirm the decision of the trial court because there was probable cause to arrest Winn, and the urine sample was properly linked to Winn.
We note the State for some unknown reason has not filed a brief in this case. Pursuant to App.R. 18(C), we may accept the appellant's statement of facts and issues as correct "* * * When [an] appellee fails to file a brief, the court of appeals may reverse [the] judgment if the appellant's brief reasonably appears to sustain reversal." State v. Owens (March 29, 1996), Mahoning App. No. 84-C.A-131, unreported, citing State v.Middleton (1993), 85 Ohio App.3d 403, 619 N.E.2d 1113. This court is troubled by the habitual failure of the prosecutor's office to file merit briefs on behalf of the City. Some measure of interest on the City's behalf must be shown. Unlike a private client who chooses not to pursue an appeal, the public does not have that option, rather, they trust the prosecutor will represent those interests at all stages of litigation. A prosecutor's duty to represent the public's interests cannot end at trial, it extends through the appeals process as well.
Winn's first assignment of error alleges:
 "The trial court erred in overruling the defendant's motion to suppress because the arresting officer did not have probable cause to make an arrest."
Winn argues the lack of field sobriety tests made it impossible to determine the existence of probable cause to arrest.
When determining whether Officer Coleman had probable cause to arrest Winn, the trial court must consider whether, at the moment of arrest, the officer had information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that Winn was driving under the influence. State v. Homan (2000),89 Ohio St.3d 421, 427, 732 N.E.2d 952, 957. When making this determination, the totality of the circumstances must be evaluated. Id.
In this case, Officer Coleman had before him the statement of Franklin that he was driving along the freeway when he heard a bang and felt his car pick up speed. Officer Coleman saw the damage to Franklin's vehicle and Winn's truck, which Winn admittedly had been driving. Rutledge, a bystander/witness who stopped after the accident, related to Officer Coleman how Winn swerved into the right lane, almost hit his car, and then ran into the rear and side of Franklin's car. This constitutes evidence of erratic driving from a reasonably trustworthy source of facts and circumstances. A police officer may consider an identified witness to an accident a reasonably trustworthy source of information concerning evidence of unsafe driving. State v. Davis (Dec. 10, 1999), Columbiana App. No. 98CO80, unreported. And as discussed above, Officer Coleman made his own observations with regard to Winn's condition immediately after the collision.
From this evidence, a prudent person could readily determine that Winn had been driving while under the influence of alcohol, thereby creating probable cause for the arrest. Contrary to Winn's argument, this court has held field sobriety tests are not mandatory for establishing probable cause. Id. "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered." Homan at 427. To hold otherwise "* * * would create the ludicrous scenario where any suspect would avoid arrest for driving under the influence by refusing to submit to field sobriety tests."State v. Heitzenrater (Dec. 7, 1998), Butler App. No. CA98-06-119, unreported. This assignment of error is meritless.
Winn's second assignment of error alleges:
 "The trial court erred in admitting the urine test because the prosecution failed to link the urine sample to the defendant."
Winn bases this assigned error upon allegedly conflicting evidence as to the color of the lid of the specimen cup. Winn notes the lid is described as blue in some chain of custody evidence, whereas Dr. Manzoor Elahi, a forensic scientist at Tri-State Laboratories, testified that it was red. Winn thus concludes this so-called "significant confusion as to the identity" of the specimen required the trial court to exclude the test results obtained from the specimen.
Pursuant to Ohio Adm. Code 3701-53-05(E), a urine sample must be labeled in order to identify it and sealed in order to detect tampering. Under Ohio Adm. Code 3701-53-06(A), a record of the chain of custody of the sample must be retained. The state bears the burden of proving substantial compliance with administrative regulations when submitting into evidence urine samples in a driving under the influence case. Statev. Plummer (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902. If the state meets its burden of proof, the burden then shifts to the defendant to establish he was prejudiced by substantial, rather than strict, compliance. Id.
The state must establish that it is reasonably certain no substitution, alteration or tampering of the sample took place. State v.Earle (1997), 120 Ohio App.3d 457, 698 N.E.2d 440. Further, the testimony of the expert should be admitted where there is no evidence indicating confusion with identity of the specimen or of the possibility of tampering with the specimen. State v. Moore (1973), 47 Ohio App.2d 181, 1 O.O.3d 267, 353 N.E.2d 866. This does not require the state to negate all possibilities of substitution or tampering. Id. The prosecution must show the specimen remained in an unchanged condition from the time it was withdrawn until the time it was analyzed, which may be accomplished by showing that the container, label and seal were in the same condition at both times. Cleveland v. Harmon (Nov. 24, 1993), Cuyahoga App. No. 64139, unreported.
During Dr. Elahi's testimony, state's exhibit number one was identified as the laboratory check-in sheet and the results of the analysis, which discloses the laboratory received, "One (1) clear ziplock bag containing one (1) sealed clear plastic specimen cup with a blue lid containing the urine sample of Marshall Winn." This description was originally made by a Tri-State employee who works at the check-in desk, and when typing the report of Dr. Elahi's analysis, transferred this description to that report.
Dr. Elahi testified he received the sample sealed in a plastic specimen cup with a screw cap. The following questions by defense counsel and answers by Dr. Elahi on cross-examination are relevant:
"Q. You said it was sealed?
A. Yes. It has some seal on it, it was tied.
 Q. You are talking about a red plastic ribbon kind of thing?
A. Yes.
 Q. Did you have to break the seal in order to open the cap?
A. Yes. When we open it, it is broken.
 Q. And you are telling us that it is a red plastic seal affixed to the cap of this plastic vile [sic], right?
A. That's right." (Tr. 24-25).
We note the check-in sheet/lab analysis was marked and identified during Dr. Elahi's testimony, but the portion of the check-in sheet describing a blue lid was never pointed out at the hearing. A description of the container's lid as being blue in the exhibit is not inconsistent with Dr. Elahi's testimony that it had a red seal. Defense counsel's own statement in his questioning differentiates between a cap and a seal as does the testimony of Officer Coleman, who testified Winn put the lid on the sample and he put the seal on it.
Moreover, Dr. Elahi was testifying about a specimen he opened more than two months before. Four out of the five participants in the chain of custody testified; the Tri-state employee from the check-in desk did not. The four who testified stated that Winn's name was written on the specimen and that the seal was in tact. Lastly, it was defense counsel who repeatedly described the seal as red throughout cross-examination. Dr. Elahi never expressly stated that the seal was red, rather he merely answered defense counsel's questions about the seal affirmatively. This assignment of error is meritless.
Accordingly, because Officer Coleman had probable cause to arrest Winn, there was no clear violation of the integrity of the urinalysis. Winn's assignments of error are meritless, and the decision of the trial court is affirmed.