OPINION
{¶ 1} Appellant, Angela Groce-Hopson, was charged in the Municipal Court of the City of Mentor, with petty theft in violation of R.C.2913.02(A)(1) for allegedly shoplifting a Play Station 2 game console and three compact discs from a Best Buy located in Mentor, Ohio. Appellant entered a plea of not guilty and the case proceeded to trial. Ultimately, the jury found appellant guilty and she was sentenced to ten days in the county jail. The execution of the sentence was stayed pending the current appeal.
 {¶ 2} Appellant now assigns the following error for our review:
"The Jury verdict in this case is against the manifest weight and the sufficiency of the evidence and should be reversed because it violates the Fourteenth Amendment to the United States Constitution and ArticleI, Section 10 of the Constitution of the State of Ohio."
 {¶ 3} As the foregoing assignment of error reflects, appellant raises two issues for our review: whether the jury's verdict was based upon insufficient evidence and whether the jury's verdict was against the manifest weight of the evidence. This point bears emphasis because, although both parties acknowledge that the concepts of sufficiency and weight admit to different analyses, the parties fail to address the issues separately. This is a mistake.
 {¶ 4} Sufficiency is a term of art describing that standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thomkins (1997), 78 Ohio St.3d 380, 386. In effect, sufficiency is a test of adequacy, i.e., whether the evidence is adequate to sustain a verdict as a matter of law. Id. An appellate court determines whether the state introduced sufficient evidence on each statutory element of the offence such that a rational trier of fact could infer that the offense was committed beyond a reasonable doubt. State v.Newton (June 27, 1997), 11th Dist. No. 96-L-058, 1997 Ohio App. LEXIS 2802, at 12, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Moreover, the weight given to the evidence and the credibility of the witnesses are primarily for the trier of facts. Statev. Reid (Apr. 19, 1996), 11th Dist. No. 95-A-0038, 1996 Ohio App. LEXIS 1549, at 6.
 {¶ 5} Alternatively, evidential weight concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. Thomkins, supra, at 387. If, on weighing the evidence, the jury finds the greater amount of credible evidence sustains the issue that a party seeks to establish, that party will be entitled to its verdict. "Weight is not a question of mathematics, but depends upon its effect in inducing belief." Id., citing Black's Law Dictionary (6th ed. 1990), 1594.
 {¶ 6} When a court reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. As such, in reviewing the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175. Even if the state presents sufficient evidence to meet its statutory burden, a verdict in its favor may still be reversed as against the manifest weight of the evidence if it meets the foregoing test.
 {¶ 7} That said, we shall address appellant's sufficiency and weight claims in turn. With respect to the former, appellant maintains that after viewing all the evidence and the inferences drawn therefrom no rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. State v. Earl (1997),120 Ohio App.3d 457, 473.
 {¶ 8} It is a fundamental principle of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court. See State v. Awan
(1986), 22 Ohio St.3d 120, 122. As such, an appellant must move for a Crim.R.29 motion for acquittal at trial in order to preserve the right to appeal on the basis of the sufficiency of the evidence. See, e.g., Statev. While, 11th Dist. No. 2001-T-0051, 2003-Ohio-4594 at ¶ 28. The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and where the evidence is insufficient, to take the case from the jury. During a jury trial, a defendant must move for acquittal at the close of the state's evidence and renew the motion at the close of all the evidence. Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163.
 {¶ 9} At no point during the trial did appellant's attorney make a Crim.R. 29 motion. Accordingly, appellant has waived any challenge to the sufficiency of the evidence regarding her conviction for theft. However, even if the error was properly preserved, there was sufficient evidence upon which the jury could reach a guilty verdict.
 {¶ 10} Appellant was charged with theft pursuant to R.C.2913.02(A)(1), which states: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; * * *"
 {¶ 11} At trial, the state presented evidence which established that, on May 17, 2002, a woman with a large purse entered Best Buy with a companion. Employees of Best Buy observed her with a Play Station 2 in her cart. Shortly thereafter, employees noticed an abandoned cart with an empty Play Station 2 box in it. In fact, one employee testified that he observed the woman opening the Play Station 2 box whereupon he notified security. Further, when she and her companion went to the checkout line, the store manager noticed the woman had a Play Station 2 and three compact discs in the large purse. When the woman and her companion left Best Buy, the store's alarms sounded, allegedly activated by magnetic strips on merchandise. As the woman proceeded to leave the store, Best Buy's employee's asked her to return. The employees testified that the woman did not have consent to leave the store with the items allegedly stored within her large purse. However, the woman refused to return and left with her companion in a car bearing a vanity license plate ("UCANGE2") that traced back to appellant. Such evidence was sufficient for a jury to find that appellant was guilty, beyond a reasonable doubt, of theft, pursuant to R.C. 2913.02(A)(1). Thus, this aspect of appellant's sole assignment of error is without merit.
 {¶ 12} Next, appellant argues that her conviction is against the manifest weight of the evidence. In order to assess this conclusion, we must observe the nature of the evidence set forth by the state and the reciprocal evidence utilized by appellant to refute the state's contentions.
 {¶ 13} At trial, the state offered testimony from three Best Buy employees and the detective investigating the case. First, Robert Leisure, Best Buy's Operations Manager, testified that, on the day in question, he was acting as store security. He was notified of a man and a woman in the store who appeared "suspicious." Leisure panned the store's camera to the department where the people were standing. Although the camera did not record the woman taking any merchandise from the store, the store's alarm sounded as the couple left. Leisure then phoned the police and eventually picked appellant out of a photo array.
 {¶ 14} In an attempt to bolster her mistaken identity defense, appellant's trial counsel cross-examined Leisure on a physical distinction between appellant and the woman in the store video. Specifically, Leisure admitted that the woman in the store video had shorter hair than appellant, i.e., according to Leisure, the woman in the video had a "butch cut," while appellant's hair was somewhat grown out at the time of the trial, some four months subsequent to the incident.
 {¶ 15} Next, the state presented the testimony of Greg Marquar, Best Buy's sales manager. Marquar stated that he was walking the store's floor when he noticed a man and woman in the video department. Marquar inquired whether they had any questions and the couple responded that they were "looking around." Marquar became suspicious when he noticed that the female had an oversized purse. At this time, he notified Robert Leisure to start filming the couple. Marquar noticed the couple picked up a Play Station 2, put it into their cart, and then covered it with something. After walking to where Robert Leisure was standing, Marquar returned and noticed a cart with an empty Play Station 2 box in it. Marquar followed the couple to the register, glanced into the woman's purse, and testified he saw a "Play Station 2 and some compact discs." As the couple left, the alarm sounded. After the woman refused to return to the store, Marquar wrote her license plate number "UCANGE2" upon his hand
 {¶ 16} On cross, appellant's trial counsel pointed out disparities between appellant's physical attributes and Marquar's physical description of the perpetrator. Namely, after the incident, Marquar stated that the perpetrator was approximately 5'10" tall; however, appellant was identified in court as standing only about 5'4".
 {¶ 17} Next, the state offered the testimony of Brian Sybo. During the incident in question, Sybo was an employee at Best Buy and testified that when he noticed the "suspicious" couple, he inquired into whether they needed help. When they responded in the negative, Sybo testified that he walked away. However, Sybo stated that, shortly thereafter, he walked back toward the couple and heard a "crinkling sound." In attempting to identify the sound, he noticed that the woman, who he had just greeted, was lifting up an open Play Station 2 box. At this point, Sybo notified loss prevention. Ultimately, Sybo was shown a photo lineup and identified appellant.
 {¶ 18} Finally, the state called Detective Brian Haller. Haller testified that, after he took the Best Buy employees' statements, he ran the license plate "UCANGE2" which listed appellant as the vehicle owner. Haller testified after receiving the two positive identifications from the Marquar and Sybo, he reviewed the store video tape. Haller testified that after reviewing the tape, he had no doubts that appellant was the person on the video. Haller testified he visited appellant at her home on June 7, 2002, but discovered she was not home. He subsequently left his business card with instructions for appellant to call him. On June 12, 2002, Haller testified that appellant left him a message whereupon an appointment was set for appellant to meet with Haller on June 20, 2002. On June 19, 2002, Haller called appellant to remind her. Appellant never showed up for the meeting. Later, on July 20, 2002, Haller met with appellant after she was brought in on a warrant. At this point, appellant told Haller that she was not at Best Buy on the date in question; however, appellant also stated that she did not loan her car to anyone on the day in question.
 {¶ 19} On cross examination of Haller, appellant's trial counsel underscored the disparity in the witness' account of the perpetrator's height. Moreover, she noted that the witness' description of the vehicle as a Chevy, between 1992 and 1995 was inaccurate. In fact, Haller testified that appellant's car was a 1999 Chevy. Appellant's trial counsel again pointed out the difference in appellant's and the alleged perpetrator's hair style. However, Haller stated that, in his view, the hairstyles of appellant and the woman in the video resembled one another.
 {¶ 20} Appellant's case was based upon a theory of mistaken identity. To this end, she presented testimony from three co-workers all of whom stated that appellant was at work the entire day on May 17, 2002. Moreover, appellant testified on her own behalf. During her testimony, appellant stated that although the license plate "UCANGE2" was hers, it had been stolen. Moreover, appellant proffered evidence of a computer printout indicating the dates and times that information was entered into the system from her computer. The relevant times are as follows: 1:45 p.m.; 1:48 p.m.; 2:46 p.m.; and 4:03 p.m. According to Haller, the incident occurred between 2:30 and 2:50 p.m. Moreover, the defense presented evidence that it takes 25 minutes to drive from appellant's place of business and the Best Buy in Mentor.
 {¶ 21} On cross examination, the state pointed out that there was nearly an hour between entries during the 1:48 p.m. to 2:46 p.m. timeframe and nearly an hour and a half between the 2:46 p.m. and 4:03 p.m. entries. The prosecution noted that such a gap was enough time for appellant to leave work, drive to Mentor, commit the crime, and drive back.
 {¶ 22} In sum, the jury was presented with conflicting versions of the facts. Appellant contends that, "[i]t cannot be said that the evidence is consistent only with a theory of guilt. Appellant presented evidence that is entirely consistent with innocence." However, the fact that appellant's version of the facts is "consistent with innocence," weighs little on its credibility and persuasive force. Here, the jury was presented with two competing theories and it found the state's case more credible than that of appellant's. When conflicting testimony is presented at trial, a conviction is not against the manifest weight simply because the jury believed the prosecution's testimony. State v. Beesler,
11th Dist. No. 2002-A-0011, 2003-Ohio-2814, at ¶ 22. As such, it is our position that the jury did not clearly lose its way and the verdict is therefore supported by the weight of the evidence. Thus, appellant's sole assignment of error is overruled.
 {¶ 23} For the above stated reasons, the jury verdict from the Mentor Municipal Court is affirmed.
Judgment affirmed.
Donald R. Ford, P.J., and William M. O'Neill, J., concur.