DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The jury found Donald Baker, defendant below and appellant herein, guilty of felonious assault in violation of R.C.2903.11(A)(2). Pursuant to Anders v. California (1967), 386 U.S. 738,18 L.Ed.2d 493, 87 S.Ct. 1396, appellant's appointed counsel advised this Court that, after a thorough and conscientious review of the record, he can discern "no reversible issue" upon which to base an assignment of error. He has asked to withdraw and, in accordance with Anders, supra, has accompanied his request with a brief that refers to those portions of the record which might arguably support an appeal. Counsel posits the following possible assignment of error for review:
 "THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S VERDICT."
Appellant also filed his own pro se brief with the following assignment of error:
 "THE TRIAL COURT COMPELLED THE APPELLANT, MR. BAKER, TO BE A WITNESS AGAINST HIMSELF BY ADMITTING INTO EVIDENCE A STATEMENT MADE DURING INTERROGATION BY APPELLANT WITHOUT MIRANDA ADVISEMENT OF THE RIGHT TO COUNSEL DURING THE INTERROGATION: A VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS OF DUE PROCESS/DUE COURSE AND EQUAL PROTECTION OF LAW AS GUARANTEED BY ART. I, § 10, AND § 16 OF THE OHIO CONSTITUTION, AND THE 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION."[2]
A brief summary of the facts pertinent to this appeal is as follows. Appellant was released from prison on July 15, 1999, and made his way to Columbus, Ohio, where he met Billy Ray Feltner (a/k/a Terry Feltner). The two men spent several weeks together doing odd jobs around town to earn money. On August 8, 1999, they met Keith Carte who previously worked with Feltner. Carte was attempting to repair his car's brakes and he asked the men for help. They agreed and, after the car was fixed, they asked Carte to take them someplace so that appellant could cash a money order. While driving around, they asked Carte to take them to Cincinnati so that appellant could visit with his family. Carte agreed, provided that appellant would help pay for gas.
However, the men apparently got lost and wound up in Athens. They stopped at the "Cross Roads Convenience Store" where they got more gas and appellant cashed his money order. They made one other brief stop before leaving town on Route 50 and heading for Belpre. At some point in Washington County, an altercation arose and appellant stabbed Carte several times in the neck and arm. Carte brought the car to a halt and fled the vehicle. He flagged down a passing car which picked him up and took him to the hospital for treatment for his injuries.
Appellant and Feltner took the car and continued to Belpre. When they stopped at a SuperAmerica station, Belpre Police Department Officer Jim Deem was parked in his cruiser at the same location. Officer Deem noted that the two men drove into the lot with "the seat belt . . . hanging out below the door on the driver's side." Officer Deem approached the vehicle to advise them that they should be wearing seatbelts when he noticed that the men were covered in blood. He told them to stand back, at which point they blurted out that they had just been "robbed and kidnaped."
The Washington County Grand Jury returned an indictment on August 13, 1999 charging appellant with attempted murder in violation of R.C.2923.02(A)/2903.02(A), felonious assault in violation of R.C.2903.11(A)(1), aggravated robbery in violation of R.C. 2911.01(A)(1) and grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1).[3]
Appellant pled not guilty to these charges and the matter proceeded to a jury trial. At trial Carte testified that, after winding up in Athens, he wanted to return home to Columbus. This supposedly angered the other men. Feltner began to argue with Carte and threatened to "jump" him and "whip" him. Then, all of a sudden, he felt appellant stab him from behind.
Appellant gave a different account of the events which transpired that day. He claimed they all agreed in Athens to go back to Columbus but, once they were out on the road, Carte turned on to Route 50, and said something about a "weed deal" in West Virginia. Appellant testified that he wanted no part of anything illegal and, thus, insisted that he either return to Columbus or be let out of the vehicle on the side of the road. Carte did neither but, rather, demanded that appellant give him the rest of the cash from his money order. Appellant related that Carte became more and more agitated and, finally, pulled a "blade" on him and Feltner. When Carte tried to attack him over the backseat, appellant grabbed a pair of scissors and stabbed appellant about the neck and arm.
The jury found appellant guilty of the felonious assault charge, but not guilty of the remaining three charges. The trial court entered judgment on the verdict and set the matter for pre-sentence investigation. At the sentencing hearing, the trial court noted that appellant had an extensive criminal history, had committed this offense only "three weeks" after his release from prison, and that the stab wounds caused serious injury and severed one of Carte's arteries. For these reasons, the court imposed the eight (8) year maximum allowable prison sentence. This appeal followed.
We begin our analysis of this matter by acknowledging the responsibilities imposed upon us by the United States Supreme Court inAnders, supra. This Court is required to undertake a full examination of the proceeding below to determine whether the instant appeal is wholly frivolous. 386 U.S. at 744, 18 L.Ed.2d at 498, 87 S.Ct. at 1400. If we find only frivolous issues on appeal, then we may proceed to address the case on its merits without the assistance of counsel. See State v.Gilliam (Jun. 10, 1999), Lawrence App. No. 98CA30, unreported; State v.Kent (Mar. 4, 1998), Jackson App. No. 96CA794, unreported; State v. Hart
(Dec. 23, 1997), Athens App. No. 97CA18, unreported. If, however, we find that there are meritorious issues for appeal, we must afford appellant the assistance of counsel in order to address those issues. Anders,supra at 744, 18 L.Ed.2d at 498, 87 S.Ct. at 1400; also see generallyPenson v. Ohio (1988), 488 U.S. 75, 102 L.Ed.2d 300, 109 S.Ct. 346. With these principles in mind, we turn our attention to the record before us as well as the possible assignments of error argued by counsel and by appellant in their respective briefs.
The first proposed assignment of error, the one posited by counsel, is that the guilty verdict is against the manifest weight of the evidence. Specifically, counsel argues that the jury should have believed appellant's account of the story and accepted that he stabbed Carte in self defense. We are not persuaded.
It is axiomatic that the weight to be afforded the evidence and the credibility to be given to the testimony of the witnesses are issues to be determined by the jury as trier of fact. See State v. Dye (1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v. Frazier (1995),73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v. Williams (1995),73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732. As such, the jury is free to believe all, part or none of the testimony of each witness who appeared before them. See State v. Long (1998), 127 Ohio App.3d 328, 335,713 N.E.2d 1, 5; State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80, 88; State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144, 1147. We also acknowledge that the jury was in a much better position than we are to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of their proffered testimony. See Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745; Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, we will not second guess the jury on matters of weight and credibility.
We recognize that two conflicting accounts existed concerning what happened in this case. Carte testified that appellant attacked him without provocation. Appellant claimed that he stabbed Carte in self defense. Obviously, the jury accepted the testimony of the victim (Carte) and we find no discernable reason why we should reject their determination. This Court will not reverse a conviction as being against the manifest weight of the evidence unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Earle (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440, 450;State v. Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814,816; State v. Davis (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966,969. In the case sub judice the jury simply afforded greater weight to the testimony of Carte than to appellant. This was well within the jury's province.
Counsel counterargues that the jury found appellant not guilty on the other three counts of the indictment. Counsel thus concludes that the jury must have accepted appellant's version of the incident in order to acquit him of those charges and that the guilty verdict for felonious assault is inconsistent therewith and should be set aside. Again, we are not persuaded.
The first count of the indictment charged appellant with attempted murder and required proof that appellant attempted to purposely cause the death of Carte. See R.C. 2903.02(A). The jury could have found that appellant meant to cause Carte physical harm under R.C. 2903.11(A)(2) (i.e. felonious assault), but did not try to cause Carte's death. The verdicts on these counts are not inconsistent.
Further, with respect to the robbery and theft charges which involved Carte's vehicle after the alleged assault took place, we have thoroughly reviewed the trial transcript and have found that the evidence is sketchy, at best, as to what happened to the car after Carte abandoned it on Route 50. The uncontroverted evidence was that Feltner sat in the front passenger seat during the entire trip. Although Officer Deem testified that he saw appellant get out of the driver's side of the car in Belpre, it is just as possible that Feltner was the one who slid over to the driver's side and took control of the vehicle after the victim fled. We thus interpret the jury's verdict as being more indicative that the State failed to carry its burden of proof on these charges rather than that they accepted appellant's version of the events. Thus, we find no contradiction or inconsistency in these verdicts. The first proposed assignment of error is therefore without merit and is overruled.
We now turn to the second (pro se) assignment of error set forth by appellant in his own brief. Although somewhat difficult to understand, appellant's argument appears to be directed at the trial court's ruling on his pre-trial motion to suppress certain statements he made to Detective Warden while incarcerated at the Washington County Jail.
Our analysis begins from the premise that appellate review of a trial court's ruling on a suppression motion presents mixed questions of law and fact. See State v. McNamara (1997), 124 Ohio App.3d 706, 710,707 N.E.2d 539, 541; State v. Brite (1997), 120 Ohio App.3d 517, 519;698 N.E.2d 478, 479; also see United States v. Martinez (C.A. 11 1992),949 F.2d 1117, 1119; United States v. Wilson (C.A.11 1990), 894 F.2d 1245,1254. A trial court assumes the role of trier of fact during proceedings on motions to suppress. State v. Payne (1995), 104 Ohio App.3d 364, 367,662 N.E.2d 60, 61-62; State v. Robinson (1994), 98 Ohio App.3d 560, 570,649 N.E.2d 18, 25; State v. Rossiter (1993), 88 Ohio App.3d 162, 166,623 N.E.2d 645, 648. Thus, the evaluation of evidence and credibility of witnesses during those proceedings are issues to be determined by the trial court. State v. Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668,685; State v. Brooks (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030,1036-1037; State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583,584-585. Factual findings by the court are to be accepted by us unless they are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1, 3; State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also see United States v. Lewis (C.A.1 1994),40 F.3d 1325, 1332. That is to say that a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7,9; State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908; also see State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review. Harris, supra at 546, 649 N.E.2d at 9; Statev. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036;also see Lewis, supra 1332; Wilson, supra at 1254. With these principles in mind, we turn our attention to the particular facts and circumstances at issue below.
Appellant argued in his motion to suppress evidence that his statement to Deputy Warden was taken in violation of his constitutional rights. Specifically, appellant claimed that he refused to sign a waiver of his so-called "Miranda rights" but that Deputy Warden continued to speak with him. The trial court held a hearing on November 3, 1999, at which time Deputy Warden gave the following account of his conversation with appellant:
 "Q. Okay. And then how did you — what was your conversation with Mr. Baker?
 A. I had asked to speak with him. He was brought over to the deputy's room in the Washington County Jail, whereupon I informed him — I introduced myself as a detective of the Sheriff's office. I told him I would like to speak with him in regards to the investigation. I began to read him his Miranda rights, which he, at that point in time, told me he did not want to talk to me.
 Q. Okay. How far through the Miranda rights did you get with him?
A. I'm going to say about half way.
 Q. Okay. And then what happened after he said he didn't want to talk to you?
 A. At that point in time, I said, `That'd be fine.' We got up, walked back down to the hallway. Standing in front of the booking room there, waiting for a correction officer to come take Mr. Baker, he looked back —
 Q. Let me back you up for just a second. Did he also tell you why he did not want to speak with you?
 A. He stated that he had been in the system for about ten years and felt that his — felt as though — if I read him those Miranda rights, that I was going to trick him.
Q. Okay. Did you know what he meant by `in the system'?
A. He had told me he had been in prison.
Q. Okay. And then, what happened after that?
A. After he told me he did not want to speak with me —
Q. Right.
 A. — I then said, `That's fine. That's your right.' We got up, walked down the hallway. As we were standing in the hallway in front of the booking room area, again, waiting for a corrections officer, Mr. Baker looked back at me and said, `I feel as though I am the victim in this investigation.'
 Q. At that point in time, I said, `Would you like to give me a statement? And that's one of the reasons why I was wanting to speak with you, to get your side of the story.' He said, `Yes.'
 A. We then walked back to the deputy's room. I began to Mirandize him again, he says, `No, I'm not going to talk to you if you give me the Miranda.' I said, `Well, I have to because you are incarcerated.' At that point in time, he says, `Here is how it happened.' And then he told me what happened.
 Q. Okay. Did he tell you anything about how he wanted to tell you what happened first, before Miranda? (sic) Or —
A. Clarify that?
 Q. I'm just trying to get the exact language. Exactly what you said to him and what he said to you prior to him giving you a statement. I know you wrote a supplement.
 A. He basically fir — he told me that he'd first like to tell me what happened, before I gave him the Miranda.
Q. Okay. And then, what did he tell you?
 A. And then, I told him that I wanted to read him his Miranda rights, he says, `No,' and then he told me what happened."
The trial court found that appellant had volunteered his statement to Deputy Warden and no constitutional violation occurred. The court consequently overruled appellant's motion to suppress. Appellant argues in his pro se brief that this constitutes error. We disagree.
The Fifth Amendment to the United States Constitution states, interalia, that no person shall be compelled to be a witness against himself. This protection against self incrimination is applicable to the individual states through the auspices of the Fourteenth Amendment Due Process Clause, see Carter v. Kentucky (1981), 450 U.S. 288, 297,67 L.Ed.2d 241, 248, 101 S.Ct. 1112, 1117; Malloy v. Hogan (1964), 378 U.S. 1,8, 12 L.Ed.2d 653, 659, 84 S.Ct. 1489, 1493-1494, and, in any event, similar safeguards are afforded under Section 10, Article I, Ohio Constitution. State v. Baker (Nov. 1, 1995), Athens App. No. 94CA1644, unreported; State v. Simmons (Aug. 25, 1992), Pike App. No. 473, unreported. In Miranda v. Arizona (1966), 384 U.S. 436, 444,16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 1612, the United States Supreme Court held that an individual must be advised of his constitutional rights whenever law enforcement officers initiate a custodial interrogation. It is well settled, however, that Miranda is not implicated when a defendant simply volunteers a statement. See State v. Phillips (1991), 75 Ohio App.3d 785,788, 600 N.E.2d 825, 827; also see State v. Hoffner (Mar. 23, 2001), Lucas App. No. L-95-181, unreported; State v. Saffell (Oct. 10, 1995), Clark App. No. 3116, unreported; State v. Durden (Feb. 10, 1994), Cuyahoga App. No. 64693, unreported.
In the case sub judice we agree with the trial court's conclusion that appellant volunteered his statements. No violation of appellant'sFifth Amendment right to be free from self incrimination occurred. We also parenthetically note that Deputy Warden made every reasonable effort to advise appellant of his Miranda rights but, on two separate occasions, appellant stopped him. After the second attempt to inform appellant of hisMiranda rights appellant blurted out his statement to the officer. We find nothing whatsoever constitutionally suspect from this exchange. For these reasons, appellant's proposed pro se assignment of error is overruled.
Having undertaken a thorough review of these proceedings, and having found no meritorious issues for appeal, we affirm the trial court's judgment in all respects and we grant counsel's motion to withdraw.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution. It is further ordered that the motion of Paul G. Bertram, III to withdraw is hereby granted.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion
[2] This Court filed an entry on December 19, 2000 directing theWashington County Clerk of Courts to serve appellant a copy of hisattorney's "Anders brief." We also granted appellant until January 30, 2001 to file a supplemental pro se brief. We later extended that deadline to February 25, 2001. Despite numerous pro se motions, appellant failed to file a brief within that time frame. Finally, on June 14, 2001, appellant filed his pro se brief. This brief is nearly four months out of rule and we would be well within our authority to summarily overrule his assignment of error on that basis alone. Nevertheless, in the interests of justice, we will accept his late brief and consider his argument on its merits.
[3] The second count of the indictment was later amended to charge a violation of sub-section (A)(2) of R.C. 2903.11 rather than (A)(1).