DECISION AND JUDGMENT ENTRY
{¶ 1} Shawn Burton appeals his conviction in the Gallia County Common Pleas Court on five counts of gross sexual imposition, three counts of rape, and one count of forcible rape of a child under thirteen years of age. Burton contends that the trial court violated his right to a jury trial when it imposed a life sentence upon him without a specific jury finding on the element of "force or threat of force" with respect to the forcible rape of a child under thirteen charge. We disagree because the element of "force or threat of force" was submitted to the jury within the court's instructions on the forcible rape charge, and the jury made a determination as to all the elements of the crime charged. Burton also contends that his conviction on the forcible rape of a child charge is not supported by sufficient evidence and is contrary to the manifest weight of *Page 2 
the evidence. We disagree because any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, and, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice. Finally, Burton contends that the trial court erred in admitting evidence of his other bad acts. We find that Burton waived his right to challenge the evidence by failing to object to it during trial, and that the court properly admitted the evidence as a statement against his own interest.
 I. {¶ 2} The Gallia County Grand Jury indicted Burton on numerous counts of rape and gross sexual imposition against two victims. Burton pled not guilty to all counts. The court severed the counts involving the first victim from those involving the second. The court dismissed counts eight, nine, twelve and thirteen of the indictment with prejudice based upon the state's inability to provide specific dates and details.
 {¶ 3} The matter proceeded to a jury trial on November 30, 2004 on the remaining charges pertaining to the first victim. Counts one through four and count six of the indictment charged Burton with gross sexual imposition, a violation of R.C. 2907.05. Count seven of the indictment charged Burton with forcible rape of a child under thirteen years of age, a violation of R.C. 2907.02(A)(1)(b) and (A)(2). Counts five, ten and eleven of the indictment charged Burton with rape, a violation of R.C. 2907.02(A)(2). *Page 3 
 {¶ 4} At the jury trial, the victim, d.o.b. January 6, 1977, testified that he was playing with friends in the yard of his apartment complex in October of 1989 when he met Burton. Burton, an adult of eighteen to nineteen years at the time of the offenses, lived in the same apartment complex with his parents. Burton developed a friendship with the victim and his mother, Sharon Evans. Evans worked as a dispatcher for the Gallia County Sheriff at the time, and had enrolled in an Ohio Peace Officers Training Academy ("OPOTA") class to become a deputy sheriff.
 {¶ 5} Burton received a special commission from the Gallia County Sheriff to attend the OPOTA class with Evans. Burton received a uniform and carried a weapon. Burton took the victim to baseball games and on hunting and fishing trips during the course of their friendship. Additionally, Burton and Evans frequently drove to the OPOTA training classes together.
 {¶ 6} Between October 1, 1989 and January 5, 1990, the victim spent the night at Burton's home on at least three occasions with Evans's permission. The victim asked to sleep on Burton's couch the first night, but Burton told him that he could not because Burton's parents liked to stay up late. Instead, the victim slept in Burton's bed.
 {¶ 7} The victim, who had never tried an alcoholic drink before meeting Burton, drank the alcohol Burton provided during each sleepover. The victim had trouble walking and keeping his eyes open after drinking with Burton. During three sleepovers, the victim awoke to find his pants unzipped and pulled down and Burton masturbating his penis. During the final encounter in this time period, Burton masturbated the victim until he ejaculated. The victim testified that he did not understand what was happening *Page 4 
to his body and that he was frightened by the experience. After each incident, the victim rolled over and pretended to be asleep. He did not say anything to anyone about the incidents.
 {¶ 8} The victim also testified about an incident that occurred in the days immediately following Christmas in 1989. The victim recalled that Burton gave him a Nintendo Game Boy, an expensive and "hot" new toy that the victim prized and his family could not afford. The victim testified that Burton took him to an Econolodge motel to spend the night, and that he had the toy with him. The room they rented had only one bed. The victim drank six or seven beers provided by Burton that night. He awoke to find Burton masturbating his penis and performing oral sex upon him. Again, the victim said nothing about the incident, and Burton did not verbalize any threats against the victim. These events underlie counts six and seven of the indictment.
 {¶ 9} The victim also related two incidents that occurred after his thirteenth birthday. The first occurred on the night of a televised boxing match between Mike Tyson and Buster Douglas. The victim testified that he watched the match at Burton's apartment with Burton and Burton's parents. After the fight, Burton and the victim went to Burton's room, where Burton provided the victim with alcohol. On this night, the victim drank only two or three beers. When the victim awoke to find Burton performing oral sex upon him, the victim told Burton that he was sober enough to understand what Burton was doing. The victim asked Burton to stop.
 {¶ 10} Burton replied that he was not "queer," and that he was just experimenting. The victim again asked Burton to stop. At that point, Burton told the *Page 5 
victim that, if he ever told anyone about their encounters, Burton would force the victim to watch Burton murder his mother, and then kill the victim and himself. Burton also told the victim that no one would ever believe him if he told anyone about the sexual abuse.
 {¶ 11} The second incident that occurred after the victim turned thirteen happened in April of 1991. The victim testified that Burton picked him up in a police cruiser so that the two could go "clock speeders." Burton was wearing his deputy sheriff uniform. The victim testified that they were sitting in the cruiser on a gravel road or driveway just off the main road near the apartment complex. Burton put his hands down the victim's pants onto his penis and then put his mouth onto the victim's penis. The victim testified that he was scared and crying, and that Burton would not let him up. Burton again threatened to kill the victim's mother, the victim, and himself.
 {¶ 12} The victim moved to Tennessee with his mother in 1991. In 1995, the victim got married and told his wife about the abuse. Shortly thereafter, the victim and his wife also told Evans about the abuse. In 1999, Burton sent a letter to the victim and a letter to Evans. In each, Burton apologized for what he did to the victim, though he used very general terms and did not clearly refer to sexual conduct. The victim and Evans read these letters to the jury.
 {¶ 13} Evans testified that she trusted Burton, and that she allowed her son to spend time alone with Burton because she, as a single parent, felt her son was safer with Burton than at home alone during the nights that she was working. Evans corroborated the victim's testimony that Burton gave him a Nintendo Game Boy for Christmas in 1989. *Page 6 
 {¶ 14} On the third day of trial, Burton filed a "Motion to Exclude" the testimony of Brian Ebert. The trial court heard arguments on the motion and denied it. Ebert testified that in 1995 or 1996, Burton told Ebert that he had an "encounter" with a young man and that he could get in trouble for it. Burton also told Ebert that the young man had moved out of state. Ebert further testified that Burton threatened to kill Ebert if Ebert ever told anyone about his admission. Burton did not object to this testimony. On cross examination, Ebert agreed that he did not know the victim and that he could not specifically relate Burton's admission to the victim.
 {¶ 15} The state introduced photographs depicting the victim at the ages of ten, eleven, and thirteen. Additionally, the state introduced a videotape of an OPOTA training class, which depicted Burton around the time of the offenses. At the conclusion of the state's case-in-chief, Burton moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion.
 {¶ 16} Burton's defense witnesses included his parents and other family members who testified that Burton is always in Indiana on a hunting trip with extended family during the week after Christmas. Burton introduced a photograph as evidence that he was with his family in Indiana on Christmas Day in 1989. Additionally, Burton's family members testified that Burton did not have a car at the time, and would not have been able to return to Gallia County on his own during the family hunting trip. Burton's family also testified that Burton did not have the money to purchase a Nintendo Game Boy around Christmas of 1989. *Page 7 
 {¶ 17} Burton's parents and a friend of Burton's, Bradley Smith, testified that they all watched the Mike Tyson/Buster Douglas boxing match together, and that the victim was not present. The witnesses provided details of the evening, such as the fact that Burton's mother made homemade pizza for them to eat during the match.
 {¶ 18} Burton did not renew his Crim.R. 29 motion at the close of evidence.
 {¶ 19} The jury returned a verdict finding Burton guilty as to all counts submitted to it, and the court entered judgment and sentence accordingly. Burton appeals, asserting the following assignments of error: "I. The Trial Court violated Defendant's right to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution, and Section 5, Article I of the Ohio Constitution, by imposing a life sentence on Appellant under count seven of the indictment without a specific jury finding regarding the use of `force or threat of force.' II. The evidence presented at trial was insufficient to establish the use of `force or threat of force' as alleged in count seven of the indictment, thus entitling Appellant to Criminal Rule 29 Judgment of Acquittal as to that allegation. III. Appellant's conviction under count seven of the indictment for Rape through the use of `force or threat of force' was against the manifest weight of the evidence. IV. The Trial Court erred in admitting other acts evidence through the testimony of witness Brian Ebert."
 II. {¶ 20} In his first assignment of error, Burton contends that the trial court violated his right to a jury trial by failing to require the jury to make a specific finding regarding his use of "force or threat of force" to commit the crime of forcible rape of a child under *Page 8 
the age of thirteen. Burton contends that, because one may be convicted of rape of a child under the age of thirteen without a showing of force, and because the added element of "force" increases the penalty for such a crime, that the jury verdict forms were required to separately provide for a finding of force. Burton contends that the trial court's failure to require the jury to make a separate finding on the element of force violates his rights pursuant to Apprendi v. New Jersey (2000),538 U.S. 466.
 {¶ 21} R.C. 2907.02(A)(1)(b) provides that no person shall compel another under the age of thirteen to engage in sexual conduct. R.C.2907.02(A)(2) provides that no person shall accomplish a violation of section (A)(1)(b) by force or threat of force. When the state establishes a violation of R.C. 2907.02(A)(1)(b) together with the "force" element contained in R.C. 2907.02(A)(2), the offense carries a mandatory sentence of life imprisonment. R.C. 2907.02(B).
 {¶ 22} In Apprendi, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. The court elaborated on this requirement when it described the precedent underlying its decision, quoting a previous decision in which the Court held: "`[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crimemust be charged in an indictment, submitted to a jury, and proven beyonda reasonable doubt.' * * * *Page 9 
(emphasis added.)" (Emphasis sic.) Id. at 476, quoting Jones v.United States (1999), 526 U.S. 227, 243, fn.6.
 {¶ 23} In Apprendi, the Court examined statutes that permitted the sentencing court to enhance a defendant's sentence based on factors that were never submitted to the jury. Contrary to Burton's argument, theApprendi holding does not state that the jury must consider the sentence enhancing element in isolation. Nor does Apprendi imply that the jury must complete a separate verdict form with respect to a sentence enhancing element. Rather, Apprendi merely provides that a sentence enhancing element must be submitted to the jury.
 {¶ 24} Ohio courts have long rejected the notion that the jury is required to make an isolated, separate finding as to a sentence enhancing element of a crime. In State v. Park (1962), 174 Ohio St. 81, the defendant was indicted for two offenses, one being for theft of four typewriters which was stipulated to be $300.00 in value. The jury form did not include a finding of value of the stolen property as required by then R.C. 2945.75. The court held the error non-prejudicial because the guilty verdict form read "as charged in the indictment" and the defendant did not object to the verdict form when the court read it to the jury. Park at 83. See, also, State v. Ridgeway (1972),35 Ohio App.2d 254; State v. Davis (Jan. 27, 1992), Ross App. No. 1746 (finding no prejudice when the jury instructions and verdict form did not require a specific finding regarding amount of drugs, given: the specificity of the indictment in charging the amount of drugs involved; the fact that the court read the indictment to the jury; the uncontroverted testimony regarding the amount of the drugs; and the fact that the court instructed the jury that it *Page 10 
could only find the defendant guilty if the amount of drugs exceeded three times the bulk amount.)
 {¶ 25} This rule extends to the "force or threat of force" element of forcible rape. In State v. Hale (Dec. 8, 1988), Franklin App. No. 88AP-375, an indictment charged the defendant with a violation of R.C.2907.02 for rape of a child under thirteen years of age whom the defendant "purposely compelled to submit by force or threat of force." The court used the phrase "by force or threat of force" in the jury instructions, and the verdict form likewise included such language. The jury returned a verdict finding the defendant guilty "as he stands charged in count one of the indictment." The Hale court found that a trial court does not commit prejudicial error by failing to require a separate verdict form for the element of "force or threat of force" where "(1) the indictment alleges all elements necessary for the greater penalty, (2) the jury instruction charges those same elements, as being necessary findings, (3) the verdict form incorporates the language of the indictments, (4) the evidence indicates the presence of the additional elements, and (5) the defendant did not object to the form of the verdict." Id. See, also, State v. McBroom (Dec. 7, 1995), Franklin App. No. 95APA03-286.
 {¶ 26} Nothing in the Apprendi holding suggests that the decisions inPark, Hale and McBroom unconstitutionally denied the defendants their right to jury trials. To the contrary, in each decision the court examined whether the sentence enhancing element was submitted to and determined by a jury.
 {¶ 27} Here, count seven of the indictment charged that "on or between December 26-27, 1989, at the Econolodge in Gallia County, Ohio, Shawn Burton, did *Page 11 
engage in sexual conduct with John Doe #1, not the spouse of the said Shawn Burton, the said John Doe #1 being less than thirteen (13) years of age, the said Shawn Burton purposely compelled John Doe #1 to submitby force or threat of force, in violation of the Ohio Revised Code, Title 29, Section 2907.02(A)(1)(b) and (A)(2), and against the peace and dignity of the State of Ohio." (Emphasis added.) Thus, the indictment charged the element of force or threat of force. The court instructed the jury with regard to count seven of the indictment that the state must prove that "[t]he defendant, Shawn Burton purposely compelled submission by force or threat of force." Additionally, the verdict form for count seven, signed by the jury, stated that they found Burton guilty of rape "in a manner and form as he stands charged in the indictment." And finally, the verdict form for count seven of the indictment included a copy of the indictment as an attachment.
 {¶ 28} Burton did not object to the jury instructions at trial or request a separate verdict form for the "force" element on count seven of the indictment. Thus, Burton waived all but plain error with respect to the instructions and verdict forms. See Crim.R. 52(B). Because the issue of whether Burton used force or threat of force was charged in the indictment and submitted to the jury, we find that the verdict complies with Apprendi. Accordingly, we find no error, let alone plain error. We overrule Burton's first assignment of error.
 III. {¶ 29} In his second assignment of error, Burton contends that the state failed to present sufficient evidence to support his conviction for forcible rape of a child under the *Page 12 
age of thirteen under count seven of the indictment, because the state did not present evidence to establish the element of "force or threat of force." Specifically, Burton contends that because the evidence contains evidence that he did not physically constrain the victim and evidence that he did not threaten the victim prior to the motel incident, the evidence establishes that he did not use force or threat of force.
 {¶ 30} The state argues that, because Burton failed to renew his Crim.R. 29 motion for acquittal at the close of all the evidence, Burton waived his right to challenge the sufficiency of the evidence on appeal. Alternatively, the state argues that it presented sufficient evidence to support a finding that Burton used force.
 A. {¶ 31} Initially, we address the state's claim that Burton waived his right challenge the sufficiency of the evidence because he failed to renew his Crim.R. 29 motion for acquittal at the close of evidence. We addressed an identical argument in State v. Shadoan, Adams App. No. 03CA764, 2004-Ohio-1756, where we stated:
 In State v. Coe, 153 Ohio App.3d 44, 2003-Ohio-2732, we recognized that past decisions of this court and other appellate courts held that a defendant who fails to properly move for a judgment of acquittal waives, absent plain error, the right to challenge on appeal the sufficiency of the evidence. We further observed, however, that "two apparently little-recognized" Ohio Supreme Court decisions indicate otherwise. In State v. Jones (2001), 91 Ohio St.3d 335, 346, and State v. Carter (1992) 64 Ohio St.3d 218, 223, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. In both Jones and Carter, the Ohio Supreme Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. We additionally stated in Coe that because "a conviction *Page 13 
based on legally insufficient evidence constitutes a denial of due process," State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, a conviction based upon insufficient evidence would almost always amount to plain error. See State v. Hermann, Erie App. No. E-01-039, 2002-Ohio-7307, ¶ 24; State v. Casto, Washington App. No. 01CA25, 2002-Ohio-6255; State v. Arrowood (Sept. 27, 1993), Pike App. No. 93CA505, at 6.
(Footnotes omitted.) Shadoan, at ¶ 16. See, also, State v.Barringer, Portage App. No. 2004-P-0083, 2006-Ohio-2649, at ¶ 60-62.
 {¶ 32} In support of its argument that Burton waived his right to object to the sufficiency of the evidence on appeal, the state cites only cases that predate our decision in Coe. In the absence of any argument to the contrary, we decline to revisit our now well-established holding that a defendant does not waive his right to challenge the sufficiency of the evidence by failing to make a Crim.R. 29 motion at the close of all the evidence. Accordingly, we address the merits of Burton's second assignment of error.
 B. {¶ 33} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, *Page 14 
paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 34} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 35} Here, the state alleged in count seven of the indictment that Burton violated R.C. 2907.02(A)(1)(b), which provides that no person shall compel another under the age of thirteen to engage in sexual conduct, and that Burton violated R.C. 2907.02(A)(2), which provides that no person shall accomplish a violation of section (A)(1)(b) by force or threat of force. As we noted above, when the state establishes a violation of R.C. 2907.02(A)(1)(b) together with the "force or threat of force" element contained in R.C. 2907.02(A)(2), the offense carries a mandatory sentence of life imprisonment. R.C. 2907.02(B).
 {¶ 36} R.C. 2901.01 (A) defines the element of force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The state must present some evidence of force or compulsion in addition to the act of rape itself in order to sustain a conviction with the added element of force. State *Page 15 v. Dye (1998), 82 Ohio St.3d 323. However, as long as the state shows that the offender overcame the rape victim's will by fear or duress, it has established the force element. State v. Martin (1946),77 Ohio App. 553.
 {¶ 37} To determine whether a particular course of conduct enabled a perpetrator to overcome the victim's will by fear or duress, "the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed." Tallmadge v. Robinson (1958), 158 Ohio St. 333, at paragraph two of the syllabus. See, also, Milam, at ¶ 15. The force need not be overt or physically brutal. State v. Eskridge (1988),38 Ohio St.3d 56, 59; State v. Milam, Cuyahoga App. No. 86268, 2006-Ohio-4742, at ¶ 9. Subtle or psychological pressure that causes a victim to be overcome by fear or duress constitutes force. Id. The legislature's "insertion of the word `any' into the definition of `force,' recognizes that different degrees and manners of force are used in various crimes with various victims." State v. Sullivan (Oct. 7, 1993), Cuyahoga App. No. 63818.
 {¶ 38} In the context of child rape, the element of force "depends upon the age, size and strength of the parties and their relationship to each other." Eskridge, at paragraph one of the syllabus. We must consider all the circumstances surrounding the sexual conduct. State v.Schaim (1992), 65 Ohio St.3d 51, 55. When the circumstances include a victim who is initially asleep when the sexual conduct begins, the state may satisfy its burden with evidence of only the minimal force required to manipulate the victim's body or clothing to facilitate the assault.State v. Lillard (May 23, *Page 16 
1996), Cuyahoga App. No. 69242; Sullivan, supra. See, also,Milam at ¶ 22. Relevant circumstances also may include the perpetrator's ability to withhold something of value to the child. See State v.Oddi, Delaware App. No. 02CAA01005, 2002-Ohio-5926, at ¶ 57 (defendant, a driving instructor, "held a certain amount of power over an undoubtedly coveted prize to a child of fifteen-and-a-half of a driver's license").
 {¶ 39} Here, the state presented evidence of the age and size of the victim relative to Burton. Specifically, the state presented evidence that the victim was twelve years old at the time of the motel offense, and that Burton was nineteen years old. The state introduced photographs of the victim when he was eleven and thirteen, and a videotape of Burton during the OPOTA class that he attended around the time of the offense. The state introduced evidence that the victim viewed Burton as his mother's peer, as Burton was attending OPOTA with Evans, the two frequently drove to and from class together, Burton was legally an adult, and Burton could drive a car. Additionally, the state presented evidence that Burton had a uniform and carried a firearm.
 {¶ 40} The victim testified that he never drank alcohol before he met Burton, and that Burton plied him with alcohol prior to all the incidents of sexual conduct up to and including the motel incident. The victim stated that he had trouble walking and keeping his eyes open after drinking the alcohol supplied by Burton. The victim also testified that, just prior to the motel incident, during an assault in Burton's bedroom, Burton caused the victim to have an orgasm for the first time. The victim testified that this experience left him bewildered and frightened. *Page 17 
 {¶ 41} On the night of the motel incident, Burton picked up the victim and drove him to the motel. Burton provided the victim with six or seven beers, which the victim described as "a lot" of alcohol. The victim testified that he had trouble keeping his eyes open and walking when he was intoxicated.[1] Additionally, just days prior to the motel incident, Burton gave the victim a Nintendo Game Boy, a "hot" new toy that the victim valued very much. The victim fell asleep, then woke to find Burton masturbating his penis and performing oral sex on him.
 {¶ 42} Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the state proved the essential element of force beyond a reasonable doubt. Specifically, any rational trier of fact could have found that Burton exercised some physical force over the victim by manipulating the victim's clothing and sleeping body into a position that facilitated the sexual conduct. This physical manipulation required force, however minimal, beyond that inherent in the act of rape itself. SeeSullivan, supra. Moreover, any rational trier of fact could have found that the victim's will was also overcome by Burton's relative size and age, by the victim's fear resulting from his lack of understanding of an orgasm and his high level of intoxication, and by Burton's position of authority established via his law enforcement officer training, his ability to drive, his relationship with Evans, and his ability to provide *Page 18 
the victim with an expensive gift. Accordingly, we overrule Burton's second assignment of error.
 IV. {¶ 43} In his third assignment of error, Burton contends that his conviction is contrary to the manifest weight of the evidence. Burton argues that, because the victim testified that Burton did not use any physical constraint, compulsion, or threats against him until after the motel incident, the jury's finding is contrary to the manifest weight of the evidence.
 {¶ 44} Even when sufficient evidence supports a verdict, we may nonetheless conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v.Banks (1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; Martin at 175.
 {¶ 45} "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), *Page 19 38 Ohio St.3d 56, paragraph two of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259
at paragraph one of the syllabus.
 {¶ 46} Burton contends that his conviction is contrary to the manifest weight of the evidence because the victim testified that Burton did not physically constrain him or threaten him until after the motel incident. However, it is well established that force need not be overt or physically brutal, so long as the victim's will was overcome by fear or duress. Eskridge, at 59.
 {¶ 47} The record contains evidence regarding the relative size of the victim and Burton in the form of photographs and a videotape, and regarding the individuals' ages relative to one another. In addition to the fact that Burton is six to seven years older than the victim, Burton was legally an adult at the time of the offenses, whereas the victim was on the brink of adolescence. As Burton notes, the record contains no evidence that the victim's mother ever told Burton to obey Burton. However, the record indicates that Burton began OPOTA classes a few months before the motel incident. He had received a commission from the Gallia County Sheriff to attend this training, and attended the training with the victim's mother. It is reasonable to infer from this evidence that the victim perceived Burton as an authority figure based upon Burton's greater age, size and strength, upon Burton's affiliation with the Gallia County Sheriff, and upon Burton's relationship with his mother. *Page 20 
 {¶ 48} The record contains no evidence that the victim voluntarily opened or removed his clothing or otherwise exposed himself in a manner to facilitate sexual conduct. Rather, the evidence indicates that the victim was asleep and awoke to find Burton's hands and mouth on his penis. One can reasonably infer that Burton exerted physical force to manipulate the victim's clothing and body in order to facilitate this sexual conduct. The victim testified that he had no sexual experience, and that he was confused and frightened when Burton caused him to have an orgasm a few weeks prior to the motel incident. It is reasonable to infer that this event contributed to the victim's feelings of fear and duress in his encounters with Burton.
 {¶ 49} The record contains evidence that Burton controlled the circumstances surrounding the motel incident. Specifically, Burton picked up the victim and drove him to the motel, and the room they stayed in had only one bed. It is reasonable to infer that Burton paid for the room and requested a room with only one bed. Additionally, the record contains evidence that Burton gave the victim an expensive toy that the victim prized just days before the motel incident, and that the victim had the toy with him at the motel. We can reasonably infer that this gave Burton added power over the victim.
 {¶ 50} Finally, the victim testified that Burton provided him with six or seven beers in the motel, and that he had trouble walking and felt very sleepy when he was intoxicated. It is reasonable to infer that the victim was intoxicated and impaired on the night in question, and that Burton could easily overcome the victim's will by fear or duress when the victim was so impaired. *Page 21 
 {¶ 51} After reviewing the entire record, we find that it contains substantial evidence upon which the jury could reasonably conclude that the state proved beyond a reasonable doubt that the victim was overcome by fear or duress in the course of the rape. Burton does not argue that the record lacks substantial evidence of the remaining elements of the crime. Thus, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Burton guilty of forcibly raping a child. Accordingly, we overrule Burton's third assignment of error.
 V. {¶ 52} In his fourth assignment of error, Burton contends that the trial court erred in permitting Brian Ebert to testify regarding his prior bad acts. The state argues that Burton waived any error because he did not renew his objection to Ebert's testimony during trial. Additionally, the state contends that the evidence constitutes a confession rather than other acts evidence.
 {¶ 53} Burton filed a written "Motion to Exclude" on the third day of trial, and the court took arguments on the motion immediately before the state called Ebert as a witness that day. In his motion, Burton related his proffer that he expected Ebert to testify that Burton told Ebert that he sexually abused a thirteen year old who had since moved out of state. Burton also expected Ebert to testify that Burton threatened to kill Ebert if Ebert ever told anyone about Burton's admission. The trial court denied the motion to exclude, and the state called Ebert to the stand. Ebert's actual testimony was similar to the proffer, except that Ebert testified that Burton merely referred to a *Page 22 
"younger" guy without specifying the young man's age. Ebert testified that this conversation occurred in 1995 or 1996. Burton did not renew his objection to Ebert's testimony during trial.
 {¶ 54} Generally, we do not directly review the rulings on motions in limine. Willis v. Martin, Scioto App. No. 06CA3053, 2006-Ohio-4846, at ¶ 17. It is axiomatic that a ruling on such motions is a tentative, interlocutory, precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. McCabe/Marra Co. v. Dover (1995),100 Ohio App.3d 139, 160; Collins v. Storer Communications, Inc. (1989),65 Ohio App.3d 443, 446. The denial of a motion in limine does not preserve any error for review. State v. Hill (1996), 75 Ohio St.3d 195,202-203. The evidence must first be presented at trial, and then a proper objection must be made, in order to preserve the error for appeal. See State v. Brown (1988), 38 Ohio St.3d 305 at paragraph three of the syllabus; State v. Grubb (1986), 28 Ohio St.3d 199
at paragraph two of the syllabus. Indeed, the failure to raise those issues dealt within a motion in limine during trial (either through objection or through a proffer of evidence) will generally amount to their waiver on appeal. See Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 141;Willis, at ¶ 17. Once a party makes a proper objection at trial, then we review the correctness of the court's ruling on that objection, rather than the ruling on the motion in limine. State v. White (Oct. 21, 1996), Gallia App. No. 95CA8, citing Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08.
 {¶ 55} Although Burton arguably objected to Ebert's evidence "during trial," in that he filed his motion to exclude on the third day of trial and the court heard arguments *Page 23 
on the motion immediately prior to the state's introduction of Ebert's testimony, Burton nonetheless objected only via a motion in limine. The rationale for declining to review the trial court's ruling on the motion in limine remains valid regardless of whether Burton filed his motion before or during trial. In either event, the trial court did not have the opportunity to rule upon the admissibility of Ebert's actual testimony, but only upon a proffer.
 {¶ 56} Nevertheless, we find that even if Burton had not waived this issue, the trial court did not err by permitting the testimony. SeeBrown at 312 and State v. Mauer (1984), 15 Ohio St.3d 239, 260 (each addressing the admissibility of evidence despite fact that defendant objected only via a motion in limine.) A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, we will not reverse its judgment absent a clear showing of an abuse of discretion with attendant material prejudice to defendant.Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271; State v. Hymore
(1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we may not substitute our judgment for the trial court's judgment. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 57} Pursuant to Evid.R. 801(D)(2), a statement against one's own interest is admissible as an admission. Burton asserts that Ebert's testimony may have been in reference to another one of his victims. However, Ebert's testimony did not refer to *Page 24 
Burton's acts with another victim, but rather to the very acts charged in the indictment. Ebert testified that Burton referred to a victim who, like the victim here, had moved out of state. The fact that Burton did not mention the victim's name when he made the admission to Ebert weakens but does not destroy the statement's relevance to the issue of whether Burton sexually abused the victim. The severed counts of the indictment and the evidence from Burton's sexual predator hearing that he had more than one victim were not before the jury, and Ebert's testimony does not imply that Burton had other victims. We cannot say that the trial court abused its discretion in admitting the evidence as an admission. Therefore, we overrule Burton's fourth assignment of error.
 {¶ 58} In sum, we overrule each of Burton's four assignments of error. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] While we note that the state did not charge Burton with a violation of R.C. 2907.02(A)(1) (c), which specifically describes rape in the instance when the the victim's ability to resist is impaired by a mental or physical condition such as intoxication, we nonetheless find the victim's intoxication relevant here as it relates to the victim's state of mind. The relevant inquiry in determining duress is whether the particular victim, not an ordinary man, was overcome by fear or duress during the rape. See Tallmadge, supra; Milam, supra. Thus, the reasonable inferences from evidence of the victim's intoxication are relevant to our determination of the record contains sufficient evidence to support a finding that Burton overcame the victim's will by fear or duress and whether the finding is contrary to the manifest weight of the evidence. *Page 25