DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. A jury found Elizabeth M. Stout, defendant below and appellant herein, guilty of (1) theft in violation of R.C. 2913.02(A)(3); and (2) forgery in violation of R.C.2913.31(A)(1).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR: *Page 2 
"THE TRIAL COURT ERRED AND DEPRIVED THE DEFENDANT/APPELLANT OF DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I. SECTION 10 AND 16 OF THE OHIO CONSTITUTION BY ENTERING JUDGMENT OF CONVICTION WHERE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AND WHERE SUCH CONVICTION[S] [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 SECOND ASSIGNMENT OF ERROR:
 "DEFENDANT/APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS] TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BECAUSE OF COUNSEL'S FAILURE TO CONSULT AN EXPERT WITNESS CONCERNING HANDWRITING AND/OR CROSS-EXAMINE THE STATE'S LAY WITNESS WITH FAMILIARITY OF JEAN COOPER'S [HANDWRITING] AND FAMILIARITY WITH THE [HANDWRITING] OF ELIZABETH COOPER."
 {¶ 3} Appellant began working for Ohio Valley Bank (bank) in the late 1990s. During that time she met Jean Cooper, an elderly customer, and they established a working relationship. As Cooper's physical and mental health deteriorated,[2] appellant put through a number of transactions on Cooper's account(s) in violation of bank policy. The bank received a "whistle blower" form in August 2006, and conducted an investigation.[3] In the end, the bank determined that $17,627.85 was withdrawn from *Page 3 
Coopers' accounts and could not be accounted for. The bank further determined it was liable to Cooper for these monies and re-credited her account(s) accordingly.
 {¶ 4} On December 19, 2006, the Gallia County Grand Jury returned an indictment that charged appellant with theft and forgery. She pled not guilty and the matter proceeded to a jury trial. At trial, Howard Lloyd, the victim's brother, testified that a signature on a "countercheck" that purported to be his sister's was not in her handwriting.[4] Molly Tarbett, bank Vice President and loss prevention manager, testified that "Teller 31" processed the countercheck, whom she identified as appellant.
 {¶ 5} Molly Tarbett also testified as to numerous transactions from 2004 to 2007 that appellant put through on Cooper's account. In many instances, these transactions were initiated through an "advice of charge[5]" but were followed by "cash out" of a part of the transaction as if a customer was present at the time.[6] Some transactions, but not all, were followed by deposits into appellant's personal accounts at the bank.
 {¶ 6} Appellant vehemently denied that she stole money from the bank or from *Page 4 
Cooper.[7] Moreover, she explained that Cooper requested the "cash out" transactions. Appellant stated that Cooper would telephone her at the bank, request that she make a certain transaction with her account(s) and then bring her cash from that transaction as spending money.
 {¶ 7} The uncontroverted evidence, however, revealed that Cooper was not part of the bank's program for house calls and, even if so, it was against bank policy for more than $100 to be delivered to a customer without two people making that delivery. Appellant explained that she was unaware of these policies.
 {¶ 8} After the jury found appellant guilty on both counts, the trial court sentenced her to serve seventeen months imprisonment on each charge, with the sentences to be served concurrently. This appeal followed.
 I {¶ 9} Appellant asserts in her first assignment of error that her convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. This argument raises two fundamentally different issues, see e.g. State v. Johnson (2000), 88 Ohio St.3d 95,112, 723 N.E.2d 1054; State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, at paragraph two of the syllabus, and, thus, we will address them separately.
 {¶ 10} In reviewing for sufficiency of evidence, appellate courts look to the adequacy of the evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. SeeThompkins, supra 386; State v. Jenks (1991), *Page 5 61 Ohio St.3d 259, 273, 574 N.E.2d 492. In other words, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, could any rational trier of fact have found all essential elements of the offenses beyond a reasonable doubt.State v. Hancock, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at]}34; State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300.
 {¶ 11} The crux of appellant's argument in the case sub judice is that no direct evidence exists to show that she forged Cooper's signature to a countercheck, or that she stole money from Cooper. The bank offered no evidence, appellant argues, that appellant's signature was on the countercheck and no evidence that the money found its way into appellant's hands or that Cooper did not receive the money. Indeed, appellant contends, the only evidence that the prosecution adduced was that she failed to follow correct bank procedure in withdrawing the money and delivering it to Cooper. We disagree.[8]
 {¶ 12} We conclude, after our review of the evidence, that although no direct evidence exists to prove that appellant took these monies, the circumstantial evidence is compelling. It is well-settled that a person can be convicted solely on the basis of circumstantial evidence. SeeState v. Stephenson, Lawrence App. No. 05CA30, 2006-Ohio-2563, at]}20;State v. Perry (Mar. 13, 1990), Adams App. No. CA-448.
 {¶ 13} Over a number of years, appellant conducted numerous bank transactions *Page 6 
on Cooper's account(s) in violation of bank policy and procedure. She processed transactions as "advice of charge," but then showed "cash out" which should not have occurred on such telephonic orders. In some cases, deposits into her personal account followed these "cash outs." Appellant claims that she visited Cooper and delivered cash to her on occasion even though bank policy prohibited a single individual of cash delivery of $100 or more. Furthermore, both Molly Tarbett and Brenda Henson testified that appellant was not a part of the program that visited customers who are unable to leave their residence to deliver cash.
 {¶ 14} We emphasize that the jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it. See State v. Long (1998), 127 Ohio App.3d 328, 335,713 N.E.2d 1; State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80. A jury is in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Appellate courts should not generally second guess juries on matters of weight and credibility. SeeState v. Vance, Athens App. No. 03CA27, 2004-Ohio-5370, at]}10;State v. Baker (Sep. 4, 2001), Washington App. No. 00CA9.
 {¶ 15} In the case sub judice, the jury was in a much better position than this Court to view appellant, her gestures, voice inflections, and to gauge credibility. Here, it appears that the jury believed the prosecution's version of the evidence, and did not believe appellant's claims that she delivered the funds to Cooper. Appellant did not contest that she made these transactions in the first place, and a logical conclusion *Page 7 
may be drawn that she kept the "cash out" money for herself. For these reasons, we find that sufficient evidence exists to support the theft verdict.
 {¶ 16} With regard to forgery, the uncontroverted evidence reveals that the countercheck signature did not belong to Cooper. In view of the fact that appellant processed the transaction, and in light of her involvement with all of the other transactions from Cooper's accounts, the jury could reasonably conclude that appellant forged the countercheck that she processed.
 {¶ 17} We now turn to appellant's second claim that her convictions are against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of evidence, an appellate court may not reverse the conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440;State v. Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. We cannot conclude that was the case here.
 {¶ 18} Again, the evidence reveals that appellant violated several bank policies with the cash withdrawals over a span of several years. Although she claimed that she did not steal the money, the circumstances surrounding the transactions are highly suspicious. No other bank employee provided services of this nature for Cooper and appellant could name no other customer to whom she provided this service (although she claimed to have delivered cash in this manner to other customers). Finally, Molly Tarbett testified that the bank's internal audits had revealed that it owed in excess of $17,000 to Cooper. *Page 8 
 {¶ 19} After we consider all of the evidence adduced at trial, we are not persuaded that the jury verdicts are against the manifest weight of the evidence. Accordingly, we hereby overrule appellant's first assignment of error.
 II {¶ 20} Appellant's second assignment of error is directed solely at the forgery conviction. She claims that she received ineffective assistance from trial counsel because counsel neither retained a handwriting expert to examine the forged countercheck, nor did counsel sufficiently cross-examine the bank witnesses familiar with her handwriting. For the following reasons, we find no merit to this argument.
 {¶ 21} Our analysis begins with the premise that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. McCann v. Richardson (1970), 397 U.S. 759, 770,25 L.Ed.2d 763, 90 S.Ct. 1441; State v. Lytle (Mar. 10, 1997), Ross App. No. 96CA2182; State v. Doles (Sep. 18, 1991), Ross App. No. 1660. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 104 S.Ct. 2052; also see State v. Issa (2001),93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Goff (1998), 82 Ohio St.3d 123,139, 694 N.E.2d 916.
 {¶ 22} Both prongs of the Strickland test need not be analyzed if the claim can be resolved under just one. See State v. Madrigal (2000),87 Ohio St.3d 378, 389, 721 N.E.2d 52. Accordingly, if nothing appears in the record to establish prejudice, we need not address the question of deficient performance. With that in mind, we turn to the *Page 9 
prejudice prong of the Strickland test.
 {¶ 23} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. State v. White (1998),82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but require that prejudice be affirmatively demonstrated. See State v. Clark, Pike App. No. 02CA684, 2003-Ohio-1707, at]}22; State v. Tucker (Apr. 2, 2002), Ross App. No. 01CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691, unreported.
 {¶ 24} Appellant did not offer anything to show that a handwriting expert would have concluded that the countercheck signature was not written by appellant's hand. Also, we see nothing to establish that additional cross-examination of the prosecution's witnesses would have produced a different outcome. Absent such evidence, appellant's argument falls short of the evidence necessary to establish prejudice underStrickland. For these reasons, we hereby overrule appellant's second assignment of error.
 {¶ 25} Having reviewed all the errors assigned by appellant and argued in her brief, and having found merit in none of them, the trial court's judgment is hereby affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed. *Page 10 
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion
[2] Cooper's brother, Howard Lloyd, testified that in 2006 he was appointed his sister's guardian and that Cooper has Alzheimer's disease and is living in a facility known as the "Arbors."
[3] The "whistle blower" form was not introduced into evidence and the circumstances under which these transactions came under scrutiny are unclear from the record.
[4] Molly Tarbett explained that a "countercheck" is a form customers use to make a withdrawl, but did not have their checkbooks with them. A "countercheck" is not to be used unless the customer is there in person.
[5] Molly Tarbett explained that an "advice of charge" is a form used when a customer calls in and wants an account debited and money transferred to another account for one reason or another. An "advice of charge" form is not used if a customer is present at the teller window.
[6] Molly Tarbett testified a "cashout" was a payment of cash to a customer present at the teller window. Further, If a customer is present for a cashout, the transaction should have been made by "countercheck" rather than "advice of charge."
[7] Molly Tarbett further related that, on occasion, when she was a teller, appellant's cash drawer would not balance and came back substantially short on money that should have been in the drawer.
[8] The prosecution argues that appellant waived the sufficiency argument by not renewing a Crim.R. 29 motion at the close of the case. We have previously rejected this argument. See e.g. State v.Burton, Gallia App. No. 05CA3, 2007-Ohio-1660, at ¶¶ 31-32; State v.Shadoan, Adams App. No. 03CA764, 2004-Ohio-1756, at ¶ 16.