DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. A jury found George E. Daniel, defendant below and appellant herein, guilty of aggravated burglary in violation of R.C. 2911.11.
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN VIOLATION OF MR. *Page 2 
DANIEL'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION IN UPHOLDING THE JURY'S VERDICT WHEN THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN VIOLATION OF MR. DANIEL'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION IN PROVIDING AN INADEQUATE CURATIVE INSTRUCTION TO THE JURY."
 {¶ 3} Appellant and Kimberly Ferrell had an on-again, off-again relationship since 1998. The couple were apparently separated in February 2006 when Ferrell and her two children moved into a Belleview Avenue residence. They reconciled in November and appellant moved into the residence, but Ferrell "threw him out" in February 2007. The following month, appellant became involved with Cara Stephens (a.k.a. Lynn Stephens).
 {¶ 4} In the early hours of April 7, 2007, appellant purportedly made threatening phone calls to the Belleview Avenue home and then had his current girlfriend drive him to the residence. After he arrived, appellant started to tear out spark-plug wires from Ferrell's car. Ferrell instructed her daughter (Kendra) and her daughter's boyfriend (Tyler Hollis) to call "the law." She then opened the door and yelled that "the law" was on its way.
 {¶ 5} Rather than leave the premises, appellant approached the door, broke a *Page 3 
plexiglass window, removed the lock mechanism and went inside.[2] He then slapped and punched Kimberly. When Kendra and Tyler attempted to intervene, appellant turned toward them. This gave Kimberly time to run to the kitchen, grab a meat cleaver and hack at appellant. The approaching sirens, in addition to the meat cleaver wounds, prompted appellant to flee the residence. He was apprehended a short time later.
 {¶ 6} On April 13, 2007, the Ross County Grand Jury returned an indictment charging appellant with aggravated burglary. He pled not guilty and the matter proceeded to a jury trial. At trial, Kimberly and Kendra Ferrell, as well as Tyler Hollis, gave their accounts of that evening. Cara Stephens testified that she was with appellant the whole evening before she drove him to the Belleview Avenue residence and that she did not see him make threatening phone calls. Stephens further stated that appellant asked her to drive him to the residence to "drop off" money for Kendra Ferell.
 {¶ 7} The jury returned a guilty verdict and the trial court imposed a four year term of imprisonment. This appeal followed.
 I {¶ 8} Appellant asserts in his first assignment of error that the jury verdict is against the manifest weight of the evidence. He contends that the testimony from the prosecution's witnesses was not credible and that this Court should overturn the conviction. We disagree. *Page 4 
 {¶ 9} In reviewing a claim that a verdict is against the manifest weight of evidence, we may not reverse the conviction unless it is patently obvious that the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457,473, 698 N.E.2d 440; State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814. We also note that the jury, sitting as the trier of fact, was free to believe all, part or none of the testimony of any witness who appeared before it. State v. Long (1998),127 Ohio App.3d 328, 335, 713 N.E.2d 1; State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80.
 {¶ 10} Generally, a jury is in the best position to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations to weigh credibility. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. An appellate court should not second guess juries on issues of weight and credibility. See State v. Vance, Athens App. No. 03CA27, 2004-Ohio-5370, at ¶ 10; State v. Baker (Sep. 4, 2001), Washington App. No. 00CA9.
 {¶ 11} In the case sub judice, the jury apparently found the testimony from Kimberly, Kendra and Tyler to be credible. Furthermore, Chillicothe Police Officer Jeremy Tuttle confirmed their testimony about the door's broken window and the sparkplug wires. If appellant went to the residence simply to deliver money to Kendra, as Cara Stephens testified, it is unlikely he would have vandalized his ex-girlfriend's car or broken a window.
 {¶ 12} Appellant counters that "the greater weight" of the evidence supports a *Page 5 
conclusion the testimony from Kimberly, Kendra and Tyler was "contrived in retaliation" for him "seeing another woman" while still residing with Kimberly. Additionally, appellant points out that Kimberly, Kendra and Tyler gave testimony at trial that was almost word-for-word identical. He also cites to an incident during trial when Tyler admitted that he talked to Kimberly about her testimony during a lunch recess.[3] We are not persuaded, however, that these points are sufficient to overturn the jury's verdict.
 {¶ 13} First, at trial defense counsel attacked the credibility of the prosecution's three main witnesses. Nevertheless, the jury rejected that argument and we should not second-guess that decision. Again, the members of this court were not in the courtroom to observe the witnesses' demeanor, gestures and voice inflections, in weighing their credibility.
 {¶ 14} Second, counsel thoroughly voir dired Tyler regarding his conversations with Kimberly. We find nothing in his statements to indicate that these discussions went into great detail, let alone that the two "contrived" to give identical testimony. Furthermore, we find no indication that Kendra was involved in these discussions and that her testimony coincided with her mother's and her boyfriend's testimony.
 {¶ 15} For all these reasons, we find no merit in the first assignment of error and it is overruled.
 II {¶ 16} The second assignment of error includes the aforementioned incident of Tyler and Kimberly discussing Kimberly's testimony. This incident came to light during *Page 6 
cross-examination, at which time the trial judge excused the jury from the courtroom and defense counsel, the prosecution and the court questioned him regarding the extent of the conversation. Tyler admitted he had talked to Kimberly about her testimony, but that the conversation lasted only "a minute or two" and did not influence his testimony in any way.
 {¶ 17} At that juncture, defense counsel requested a mistrial. The trial court overruled appellant's motion, but the court included in its jury instructions the following:
 "At the beginning of this case, the court made an order for a separation of witnesses. This orders the witnesses to remain outside the courtroom so that they may not hear what witnesses may — so they may not hear what witnesses hear in the case. The purpose of this order is to make sure the witnesses are not influenced by the testimony of others who testify in the case. You have heard some testimony that complaining witness, Kim Ferrell, discussed questions that she was asked by both defense attorney and assistant Ross County Prosecuting Attorney with witness, Tyler Hollis, and you will determine what effect, if any, that this has on your assessment of the credibility of either or both Kim Ferrell and Tyler Hollis." (Emphasis added.)
 {¶ 18} Appellant argues that this curative instruction is inadequate because it should have specified that Tyler and Kimberly discussed "testimony" rather than "questions." He maintains this inadequacy deprived him of due process of law, thus necessitating a reversal of the conviction. We disagree.
 {¶ 19} At the conclusion of the jury instructions, the trial court asked both parties if they had any objection to those instructions. Both sides responded in the negative. If a problem existed with that instruction, counsel should have addressed it at that time and the trial court would have had the opportunity to take appellant's argument into account. However, counsel did not object, and the issue has been waived. See e.g. *Page 7 State v. Siddell, Erie App. Nos. E-05-094 E-05-095, 2007-Ohio-1875, at 1J14; State v. Fugate (Oct. 22, 1998), Washington App. No. 97CA2546;State v. Lagore (Mar. 22, 1992), Ross App. No. 1719.
 {¶ 20} Moreover, we are not persuaded that substituting the word "testimony" for "question" would have made any difference here. The trial court and counsel brought the matter to the jury's attention. The gist of the curative instruction (and defense counsel's closing argument) is that the witnesses rehearsed and contrived their testimony. Obviously, the jury did not agree with this view. For these reasons, we hereby overrule appellant's second assignment of error.
 {¶ 21} Having reviewed all the errors assigned by appellant and argued in his brief, and having found merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court *Page 8 
dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. McFarland, J.: Concur in Judgment Opinion
[2] The Ferrell family apparently lost their keys to the residence and kept the door unlocked at all times. However, Kimberly Ferrell testified that the family stuck "butter knives" into the door jam to keep it from being opened. Appellant removed those butter knives to gain entry into the home.
[3] This incident is discussed in more detail during our review of appellant's second assignment of error. Consequently, we do not fully address it here. *Page 1